VILLAGE OF WHITEFISH BAY, Appellant, v. WISCONSIN EMPLOYMENT RELATIONS BOARD, Respondent.

*March 2—April 11, 1967.*

434

436

438

For the appellant there was a brief by *Harry J. Hayes,* village attorney, attorney, and *Laurence E. Gooding, Jr.,* and *Quarles, Herriott & Clemons* of counsel, all of Milwaukee, and oral argument by *Mr. Gooding.*

For the respondent the cause was argued by *Beatrice Lampert,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

A brief *amicus curiae* was filed by *Goldberg, Previant & Uelmen* of Milwaukee, for Local Union No. 1486, affiliated with Dist. Council 48 of American Federation of State, County & Municipal Employees (AFL–CIO).

A brief *amicus curiae* was filed by *Jean G. Setterholm,* attorney, and *Julian Bradbury,* legal counsel, both of Madison, for the League of Wisconsin Municipalities.

BEILFUSS, J. The following issues are presented in this appeal:

1. Does the WERB have exclusive jurisdiction to determine that the statutory conditions for fact-finding exist under sec. 111.70, Stats.?

2. Does the WERB have jurisdiction to determine whether a municipal ordinance is substantially in compliance with sec. 111.70, Stats.?

3. Is the Whitefish Bay Ordinance No. 833 in substantial compliance with sec. 111.70, Stats., with respect to:

(a) Time limitations on the initiation of fact-finding?

(b) voter and property owner limitations of fact-finding panel members?

(c) the requirement of a tripartite panel?

The legislature by enacting sec. 111.70, Stats., recognized the advisability of providing procedures to establish and maintain good labor relations between municipal employees and their employer, the municipality. Although the employees are given the right to organize and bargain collectively through their chosen union representatives, they are prohibited from striking. In order to help achieve peaceful and fair settlements of disputes that have not been resolved by negotiation, sec. 111.70 (4) (e) to (m) provides for fact-finding procedures. The recommendations of the fact finder are not binding on either party. The procedure is designed to provide a means whereby the facts can be determined on an impartial basis and made known to the citizens of the municipality.

The WERB's first ground for declaring the village ordinance invalid was that it would deprive the WERB of exclusive jurisdiction to determine whether conditions for fact-finding exist. The circuit court did not specifically base its decision confirming WERB's order on this ground but did state "[u]pon the presentation to WERB of a petition to 'initiate Fact-Finding' it is the duty of the WERB, regardless of any local ordinance, to make the basic determination as to whether or not a 'deadlock' exists."

The village and the *amicus curiae* brief of the League of Wisconsin Municipalities contend that sec. 111.70 (4) (m), Stats., is broad enough in its scope to authorize municipalities to locally provide who shall determine whether the conditions for fact-finding exist and because the ordinance in question does so the WERB does not have jurisdiction to entertain the employees' petition.

The WERB and *amicus curiae* brief of Local Union No. 1486 assert that the WERB has exclusive jurisdiction to determine whether the conditions for fact-finding, namely, a deadlock of negotiations or a failure or refusal to negotiate in good faith, exist; and that par. (m) authorizes the municipality only to provide how the fact finder shall be appointed once the WERB has certified that one or both of the conditions for fact-finding exist.

Par. (m) of sec. 111.70 (4), Stats., provides:

> *"Local ordinances control.* The board *shall not initiate* fact finding proceedings in any case when the municipal employer through ordinance or otherwise has established fact finding procedures substantially in compliance with this subchapter." (Emphasis supplied.)

Thus the jurisdictional question depends upon what the legislature meant by the term "initiate fact finding proceedings." In several proximate provisions the legislature has indicated its intent.

Under par. (f), "[u]pon receipt of a petition to initiate fact findings, the board shall make an investigation and determine whether or not" the conditions for fact-finding exist, "and shall certify the results" of the investigation. "If the certification requires that fact finding be initiated, the board shall appoint . . . a qualified disinterested person or 3-member panel when jointly requested by the parties, to function as a fact finder."

The procedural chronology set forth in the statute contemplates "that fact finding be initiated" after the WERB has received a petition, investigated, and certified the results of the investigation. The statute, therefore, indicates that fact-finding is "initiated" with the appointment of the fact finder, not with the filing of a petition alleging a deadlock or failure to negotiate in good faith.

We conclude the legislature has determined that local procedures under par. (m) become effective only after the WERB has made the initial determination that the

conditions for fact-finding under par. (e) exist.[1] The WERB has exclusive jurisdiction over this preliminary determination.[2]

The WERB was correct in its conclusion that that part of Ordinance No. 833 which provides local methods to determine whether the conditions for fact-finding exist is invalid. This is so because sec. 111.70, Stats., does not in any way authorize municipalities to unilaterally establish procedures to determine whether the conditions for fact-finding exist.

Par. (m) of sec. 111.70 (4), Stats., provides that the WERB shall not initiate fact-finding proceedings in any case where the municipal employer has established its own "procedures substantially in compliance" with sec. 111.70. The legislature has not provided who shall decide whether fact-finding procedures provided by municipal

---

[1] We do not consider in this opinion a situation where both parties agree to fact finding or the procedures to be followed because this problem is not within the facts of this case.

[2] This conclusion is buttressed by subsequent action by the legislature regarding public employment relations. When first enacted by the 1961 legislature, Subchapter IV (sec. 111.70) of ch. 111 bore a caption that began: "RIGHT OF PUBLIC EMPLOYEES TO ORGANIZE." The 1965 legislature enacted subchapter V (secs. 111.80–111.94) to govern labor relations and collective bargaining in state employment and at the same time substituted the word "MUNICIPAL" for "PUBLIC" in the caption to subchapter IV. Sec. 111.88 of subchapter V provides for fact-finding procedures in state employment relations which make quite clear that fact-finding is "initiated" *after* the WERB has determined that conditions for fact finding exist.

"111.88 *Fact Finding.* . . . (1) . . . *After* its investigation the board shall certify the results thereof. If the certification requires that fact finding be initiated, the board shall appoint . . . a qualified disinterested person or 3-member panel . . . as a fact finder." (Emphasis supplied.)

Sec. 111.88, *in pari materia* with sec. 111.70 (4) (m), Stats., clearly indicates that by "initiate fact finding proceedings," the legislature means the method by which the fact finder is appointed once the prerequisite conditions are determined by the WERB.

ordinance substantially comply with the statute. In the case at bar the WERB, upon petition by the employees' association, decided the substantial compliance questions raised with respect to Ordinance No. 833. The board's decision on these questions was reviewed by the circuit court and is now before this court on appeal. The village and the *amicus* league insist that the WERB has no jurisdiction to determine substantial compliance questions because such jurisdiction would allow the board to determine whether it may exercise its power to initiate fact-finding when confronted with a local fact-finding procedure. The only proper procedure to challenge the ordinance, they contend, is an equity action or a declaratory judgment action in the courts. The village and the league view the WERB's decision on the substantial compliance issue as a usurpation of judicial authority and as a restriction of the "home rule" powers of cities and villages.

The circuit court decided that it is the duty of the WERB to determine whether an ordinance is in substantial compliance with the statute. The WERB of course agrees that it has jurisdiction to decide the substantial compliance questions. It relies upon its established administrative practice of deciding this issue and upon an opinion of the attorney general, which states:

"1. Sec. 111.70 (4) (m) designates no agency other than the board to determine whether the local procedures are 'substantially in compliance with' the state law. The agency charged with enforcement of a law must, in the first instance, determine whether the conditions invoking application of the law or exceptions to it, exist." 51 Op. Atty. Gen. (1962), 90, 93.

Actually, the administrative practice since 1962 has amounted to only six cases involving five local ordinances, all of which were found by the board to be not in substantial compliance with the statute. Digest of Decisions of WERB (1966), Vol. 1, pp. 242, 243, sec. M1033.1. In

view of this poverty of administrative experience and of the recent passage of the statute giving rise to this strictly legal question of jurisdiction, perhaps the court ought to examine it afresh as a question of law not especially involving administrative expertise. For such a question the court feels free to substitute its own judgment for that of the administrative agency. *Pabst v. Department of Taxation* (1963), 19 Wis. (2d) 313, 323, 120 N. W. (2d) 77.

The legislative history of sec. 111.70, Stats., gives no indication of any consideration by the legislature of the question of who should decide if an ordinance is in substantial compliance with the section. The section was originally introduced as Bill 336, A., in the 1961 session of the legislature. In its original form, as passed by the assembly, the bill made no authorization for local procedures for fact-finding. Par. (m) was added in a senate amendment which was concurred in by the assembly. If the legislature did consider who would decide substantial compliance questions under the amendment, the statute does not so indicate. Thus the court must decide this jurisdictional question in light of the overall statutory objectives and its practical administration.

By means of subchapters I, III, IV and V of ch. 111, Stats., the legislature has generally given to the WERB the authority and the responsibility to resolve labor disputes in Wisconsin. In *Tecumseh Products Co. v. Wisconsin Employment Relations Board* (1964), 23 Wis. (2d) 118, 128, 126 N. W. (2d) 520, this court explicitly recognized the power of the WERB to adjudicate certain matters in the field of labor relations and of the state's freedom to allocate to the WERB certain functions which partake of the state's judicial power. The court explained, at pages 128, 129:

". . . we believe that the purpose and the policies expressed by the Wisconsin legislature in creating the

W. E. R. B. make it clear that it was intended that the W. E. R. B. have the authority to resolve such disputes in Wisconsin, whether state or federal rules are to be applied. This is consistent with the desire to substitute the 'processes of justice for the more primitive methods of trial by combat.' Sec. 111.01 (4), Stats."

We reject the contention that the WERB has no jurisdiction to decide substantial compliance questions because it is an administrative agency and not a court. *American Motors Corp. v. Wisconsin Employment Relations Board* (1966), 32 Wis. (2d) 237, 244, 145 N. W. (2d) 137.

Since the WERB *can* perform such an adjudicative function, the particular question is whether the practical administration of sec. 111.70 (4), Stats., requires or allows the board to decide whether a local procedure is in substantial compliance with sec. 111.70. If at this point the WERB has no jurisdiction to decide the substantial compliance question, the whole operation of the statutory scheme for fact-finding would be impeded. If a court determination as to substantial compliance were necessary before the board could decide whether to appoint a fact finder or to certify to the municipality that fact-finding should be initiated under a local ordinance, a detrimental delay could result. On the other hand, it is highly practical for the WERB to make the determination as to substantial compliance, if raised, immediately after determining that the conditions for fact-finding exist. Then the board can either appoint a fact finder or forward its certification to local parties to proceed under the substantially complying local ordinance. This procedure will facilitate the general policy of the state "to provide a convenient, expeditious and impartial tribunal by which these interests may have their respective rights and obligations adjudicated." Sec. 111.01 (4).

Of course the WERB's decision as to substantial compliance of the local ordinance is reviewable by the courts under ch. 227, Stats., as is being done in this action.

However, the board's jurisdiction to determine the substantial compliance question does not prevent a party from directly challenging the ordinance in the courts by way of a declaratory action under sec. 269.56, nor does it prevent a party from seeking a direct declaratory ruling from the WERB under sec. 227.06.

In deciding whether the ordinance is in substantial compliance with the statute, the test to be applied is whether the ordinance actually complies with the essential objectives and purposes of the statute. The ordinance must serve and not defeat the statutory purpose or stated requirements.[3] We cannot assume that sub. (m), which authorizes the municipal ordinance, was intended to emasculate or weaken the statute or to extend advantage to employers or employees inconsistent with the overall statutory purpose.

The briefs for both the village and *amicus curiae* (League of Municipalities) cite cases for the proposition that if the ordinance has any reasonable basis it will be upheld. This is a standard used to test the constitutionality of an ordinance. No matter how reasonable the ordinance may be *per se,* it will not be held to be valid if it offends the statute that authorizes it and requires it to substantially comply with the statute. We are not here deciding the constitutionality of an ordinance but determining whether it is in substantial compliance with a statute.

The statute (sec. 111.70 (4) (f)) places no time limitations or deadlines upon initiation of the fact-finding process. The procedure is begun merely "[u]pon receipt of a petition to initiate fact findings" by the board. Secs. 4 (b) (1) and 5 (h) of Ordinance No. 833 in effect confine the fact-finding process within a period between

---

[3] See *Burmek v. Miller Brewing Co.* (1957), 2 Wis. (2d) 330, 334, 86 N. W. (2d) 629; *Kasner v. Stanmire* (1944), 195 Okla. 80, 82, 155 Pac. (2d) 230; 40 Words and Phrases, Substantial Compliance, p. 771.

October 8th and November 15th of each year. The stated purpose of the time limitation is to allow the results of the fact-finding to be reflected in the village budget, which sec. 61.46, Stats., requires the village to adopt on or before December 15th of each year. We must ask whether this stated purpose comports with the purpose of the statute.

The legislature designed the fact-finding procedures in order that municipal employment disputes could be peaceably settled by allowing public opinion to induce settlement once the merits are exposed to public view.

"The Wisconsin fact-finding provisions were enacted in the hope that public opinion would induce public officials to support the recommendations of the fact finder and thereby lead to a solution of the dispute." The Strike and Its Alternatives in Public Employment, 1966 Wisconsin Law Review, 549, 571.

Nothing in the record indicates that a "deadlock" would occur only at the short time within which fact-finding is limited by the ordinance. And since the village is free to change employment conditions at any time during the year (sec. 61.34, Stats.), this limitation is not in substantial compliance with a statute which contains no such limitations. Moreover, the limited time may not be sufficient to allow public opinion to mobilize before the village passes its budget—a frustration of the very purpose of the statute. It should be noted that the time limits imposed by the ordinance are not limited to labor disputes requiring budget changes; nor is the village precluded from making emergency fund transfers after the December 15th deadline. In light of the above, the WERB and the circuit court have correctly found that the time limitations of the October 8th and November 15th deadlines in the ordinance are not substantially in compliance with sec. 111.70. But since these limitations are easily separable, the invalidity of these limits need not invalidate the entire ordinance.

Par. (f) of sec. 111.70 (4), Stats., uses only the adjectives "qualified disinterested" to describe the qualifications of fact finders. Sec. 4 (f) of Ordinance No. 833 provides:

*"Qualifications of panel members.* Panel members shall be registered voters and property owners in the Village of Whitefish Bay for at least three years prior to his appointment."

The issue of whether an ordinance placing taxpayer restrictions on fact finders substantially complies with the statute was squarely raised in *Shawano County v. Wisconsin Employment Relations Board* (1963), Dane County Circuit Court Case No. 114–022, WERB Case No. 6388. The reasoning of Judge JOHN A. DECKER, at page 16, is persuasive:

"The arguments of counsel seem inordinately to emphasize the desirability of a local determination of the facts. Local self-government is an axiom of American political science based upon the premise that local people familiar with life in the community are best able to solve its governmental problems. When it is urged, as here, that the fact-finder should be a 'taxpayer' 'sensitive to local conditions' rather than 'someone who is completely and coldly neutral to these pressures and considerations,' the argument tends to evince an intention to seek a local fact-finder in the hope that he will not be 'disinterested' as the statute provides." [4]

In addition, the residence requirement places an unwarranted residence restriction upon the association's choice of its member of the panel.

The conclusion of the WERB and the trial court that the voter and landowner limitations of Ordinance No. 833 are not in substantial compliance with the statute, is justified. These limitations, too, are separable from the rest of the ordinance.

---

[4] Ordinarily the court does not consider unpublished opinions. We have done so in this instance because Judge DECKER's opinion was cited by both parties.

Par. (f) of sec. 111.70, Stats., in part provides:

". . . the board shall appoint from a list established by the board a qualified disinterested person or 3-member panel when *jointly* requested by the parties, to function as a fact finder." (Emphasis supplied.)

Ordinance No. 833 provides that all fact-finding in Whitefish Bay shall be by a three-member panel. The WERB held this provision not in substantial compliance with the statute; the circuit court did not review the issue.

On its face the ordinance is clearly not in compliance with par. (f). This is so not because of the tripartiteness of the panel nor because of the method for choosing the third panel member, but because the tripartite panel is imposed unilaterally by village ordinance. The statute allows a three-member panel only "when jointly requested by the parties." Such is not the case under the ordinance.

The ordinance also requires that both the employees and the employer appoint one panel member and the two to appoint a third (or a designee of the American Arbitration Association). The provision of the ordinance that the employees and the employer each appoint a panel member does not substantially comply with the statutory requirement that fact finders, which we construe to include panel members, must be "qualified disinterested" persons.[5]

Because of these several basic variances with that statute we conclude the Ordinance No. 833 of the village of Whitefish Bay is not in substantial compliance with sec. 111.70, Stats., and is, therefore, invalid.

---

[5] This conclusion comports with statutory policy and administrative practice. The WERB has taken "qualified disinterested" to modify "panel" as well as "person." In the only proceeding to date in which a three-man panel was used for fact-finding, all were qualified and disinterested. 1966 Wisconsin Law Review, *supra*, at page 573, footnote 139.

The order of the WERB as confirmed by the circuit court should be enforced.

*By the Court.*—Judgment affirmed.

HANSEN, J., took no part.