BLACKHAWK TEACHERS' FEDERATION LOCAL 2308, WFT, AFT, AFL–CIO, Petitioners-Appellants,

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION, Respondents.

Court of Appeals

*No. 81–1672. Submitted on briefs July 22, 1982.—
Decided October 26, 1982.*
(Also reported in 326 N.W.2d 247.)

416

For the petitioners-appellants the cause was submitted on the briefs of *John S. Williamson, Jr.,* and *Habush, Habush & Davis, S.C.,* of Milwaukee.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general and *David C. Rice,* assistant attorney general.

For the intervenor Blackhawk Vocational, Technical and Adult Education District a brief was filed by *John T. Coughlin* and *Steven A. Veazie* and *Mulcahy & Wherry, S.C.* of Madison.

Brief of amicus curiae was filed by *Michael L. Stoll,* staff counsel, on behalf of Wisconsin Education Association Council.

Before Gartzke, P.J., Bablitch and Cane, JJ.

CANE, J.   Blackhawk Teachers' Federation (Federation) appeals an order affirming a declaratory ruling of

the Wisconsin Employment Relations Commission
(WERC). The Federation contends that the circuit court
erred in affirming the WERC's determinations that cer-
tain agreement provisions are permissive collective bar-
gaining subjects under sec. 111.70(1)(d), Stats.[1] The
Federation's challenge to the WERC ruling relates to the
following subjects:

(1) Student contact period;
(2) A teacher's right to discuss school practices and
policies, and to challenge such policies and their effects
through grievance arbitration;
(3) Data contained in teacher application forms and
utilized in oral interview procedures;
(4) A teacher's responsibility to maintain classroom
discipline;
(5) The staff handbook and its relation to the collec-
tive bargaining agreement;
(6) The school board's obligation to provide teachers
with clerical assistance;

---

[1] Section 111.70(1)(d), Stats., states:

"Collective bargaining" means the performance of the mutual
obligation of a municipal employer, through its officers and
agents, and the representatives of its employes, to meet and con-
fer at reasonable times, in good faith, with respect to wages,
hours and conditions of employment with the intention of reaching
an agreement, or to resolve questions arising under such an
agreement. The duty to bargain, however, does not compel either
party to agree to a proposal or require the making of a conces-
sion. Collective bargaining includes the reduction of any agree-
ment reached to a written and signed document. The employer
shall not be required to bargain on subjects reserved to manage-
ment and direction of the governmental unit except insofar as
the manner of exercise of such functions affects the wages, hours
and conditions of employment of the employes. In creating this
subchapter the legislature recognizes that the public employer
must exercise its powers and responsibilities to act for the gov-
ernment and good order of the municipality, its commercial benefit
and the health, safety and welfare of the public to assure orderly
operations and functions within its jurisdiction, subject to those
rights secured to public employes by the constitutions of this
state and of the United States and by this subchapter.

(7) A teacher's right to be free from discipline when speaking or writing as a citizen.

We affirm the circuit's order insofar as it affirms the WERC's ruling that the Blackhawk Vocational, Technical and Adult Education District (District) does not have a duty to bargain with respect to numbers one through six above. We reverse that portion of the court's order affirming the WERC's ruling as to number seven.

## FACTS

The District and the Federation were parties to a collective bargaining agreement in effect between 1976 and 1978. During negotiations for a successor contract a dispute arose whether certain provisions in the 1976–78 agreement were mandatory or permissive collective bargaining subjects, and therefore whether the District had a duty to bargain collectively with respect to these provisions.

The Federation subsequently petitioned the WERC to commence mediation-arbitration pursuant to sec. 111.70 (4) (cm) 6, Stats., of the Municipal Employment Relations Act (MERA). The parties reached agreement on most provisions to be included in the successor agreement except those that the District contended were permissive subjects of collective bargaining.

The District petitioned the WERC for a declaratory ruling pursuant to sec. 111.70(4)(b), Stats.,[2] as to whether the disputed provisions were mandatory subjects of bargaining under sec. 111.70(1)(d). The WERC subsequently issued its ruling in which it found one pro-

---

[2] Section 111.70(4)(b), Stats., provides, in part:

*Failure to bargain.* Whenever a dispute arises between a municipal employer and a union of its employes concerning the duty to bargain on any subject, the dispute shall be resolved by the commission on petition for a declaratory ruling. The decision of the commission shall be issued within 15 days of submission and shall have the effect of an order issued under s. 111.07.

vision to be a mandatory subject of bargaining and eight provisions to be permissive. The WERC additionally declined to rule on two provisions because one was not supported by a sufficient factual basis and because the other was ambiguously worded.

The Federation petitioned the circuit court for a review of the WERC's ruling as to certain provisions of the bargaining agreement, and the court subsequently affirmed the WERC's ruling without modification. Because of the statewide importance of the issues presented on this appeal, we accepted an amicus brief from the Wisconsin Education Association Council (WEAC).

STANDARD OF REVIEW

The WERC had before it no facts other than the challenged contractual provisions. It received no additional evidence. The WERC's determinations concerning whether the provisions are mandatory or permissive subjects of bargaining involve an interpretation of sec. 111.70(1) (d). The application of a statute to a particular set of facts is a question of law. *Bucyrus-Erie Co. v. DILHR*, 90 Wis. 2d 408, 417, 280 N.W.2d 142, 146 (1979). In reviewing the WERC's interpretation of sec. 111.70(1) (d), relating to the scope of municipal collective bargaining, the general rule in this state is that " 'the construction and interpretation of a statute adopted by the administrative agency charged by the legislature with the duty of applying it is entitled to great weight.' " *Beloit Education Ass'n v. WERC*, 73 Wis. 2d 43, 67, 242 N.W.2d 231, 242 (1976). Under this standard, the agency's ruling will be upheld if it constitutes any rational statutory interpretation. *See id.; Berns v. WERC*, 99 Wis. 2d 252, 261, 299 N.W.2d 248, 253 (1980).

We will not reverse the agency's determination where its statutory interpretation is one of several reasonable

interpretations that can be made equally consistent with the statutory purpose. *De Leeuw v. DILHR,* 71 Wis. 2d 446, 449, 238 N.W.2d 706, 709 (1976). If the agency's interpretation has no rational basis, however, we do not defer to its conclusions of law. *Beloit,* 73 Wis. 2d at 67–68, 242 N.W.2d at 242–43; *Wisconsin Southern Gas Co. v. PSC,* 57 Wis. 2d 643, 652, 205 N.W.2d 403, 408 (1973).

This general standard of review is not absolute and is subject to certain qualifications. Thus, in *Beloit,* the supreme court declined to apply this rule in reviewing a WERC declaratory ruling concerning whether certain teacher contract proposals were mandatory subjects of collective bargaining. The WERC's ruling was issued in 1974 and involved an interpretation of sec. 111.70(1)(d). Because the declaratory ruling raised "very nearly questions of first impression," the court did not apply the "any rational basis" standard but instead accorded "due weight" to the WERC's ruling. *Beloit,* 73 Wis. 2d at 68, 242 N.W.2d at 243. The court noted that the "any rational basis" rule would apply only if "the administrative practice is long continued, substantially uniform and without challenge by governmental authorities and courts." *Id.,* at 67–68, 242 N.W.2d at 242–43.

The District and the WERC contend that since the court's 1976 decision in *Beloit,* the WERC has accumulated much experience in determining the scope of municipal collective bargaining under sec. 111.70(1)(d). The District and the WERC assert that the "any rational basis" rule is therefore the appropriate standard of review in this case.

The Federation contends that the WERC's ruling either follows similar rulings made at a time when the WERC had little administrative experience, or raise issues of first impression, including one that implicates fundamental constitutional rights. The Federation argues that the "due weight" standard applied in *Beloit*

must govern our review of the WERC's declaratory ruling.

We conclude that the "any rational basis" standard should be applied. Eleven years have elapsed since the legislature adopted the current statutory procedure that allows the WERC to issue declaratory rulings relating to the scope of municipal collective bargaining. The WERC issued the ruling challenged in *Beloit* eight years ago, and it has since gained substantial experience in determining whether contractual provisions are mandatory or permissive subjects of bargaining.[3] The WERC no longer has a "poverty of administrative experience" in determining the scope of bargaining under sec. 111.70(1)(d).[4] *See Village of Whitefish Bay v. WERB*, 34 Wis. 2d 432, 444–45, 149 N.W.2d 662, 669 (1967).

Although our supreme court applied the "due weight" standard to a WERC ruling after its decision in *Beloit,* that ruling required an assessment of the impact on ch. 62, Stats., of an attempt by the WERC to expand its scope of authority beyond the limits of ch. 111, Stats. *See City of Brookfield v. WERC,* 87 Wis. 2d 819, 826–28, 275 N.W.2d 723, 727 (1979). The instant case does not involve an attempt by the WERC to exceed its authority beyond the statutorily prescribed limitations, nor does it concern an area in which the WERC has no longstanding practice or position. *See Berns,* 99 Wis. 2d at 262, 299 N.W.2d at 253. Further, the record does not indicate

[3] *See* Weisberger, *The Appropriate Scope of Bargaining in the Public Sector: The Continuing Controversy and the Wisconsin Experience,* 1977 Wis. L. Rev. 685, 714–15, 720–25, 731.

[4] *See id.,* at 714–15 n. 110–121, for a listing of numerous decisions by the WERC relating to bargaining scope under § 111.70 (1)(d). The WERC issued several of these decisions after the 1974 ruling subsequently challenged in *Beloit Education Ass'n v. WERC,* 73 Wis. 2d 43, 242 N.W.2d 231 (1976), and they include rulings concerning bargaining scope within the context of public education.

that the WERC's rulings under sec. 111.70(1)(d) have been significantly challenged since the court's decision in *Beloit*. In view of the experience gained by the WERC in interpreting sec. 111.70(1)(d), we conclude that the "any rational basis" standard of review is appropriate in this case.

## TEST TO DETERMINE SCOPE OF BARGAINING

The Federation's challenge to the WERC's ruling involves a determination whether certain proposals are mandatorily bargainable under sec. 111.70(1)(d). Our supreme court has stated that the applicable test is whether a proposal is "primarily related to wages, hours and conditions of employment." *Beloit*, 73 Wis. 2d at 54, 242 N.W.2d at 236. A proposal primarily related to wages, hours, and working conditions is a mandatory subject of bargaining on which there is a duty to bargain. A proposal that relates to educational policy and school management and operation is a permissive subject of bargaining, and it imposes no bargaining duty. *See Unified School District No. 1 v. WERC*, 81 Wis. 2d 89, 96, 259 N.W.2d 724, 728–29 (1977). The impact of an educational policy affecting wages, hours, and working conditions is, however, mandatorily bargainable. *See Beloit*, 73 Wis. 2d at 54, 242 N.W.2d at 236; *see also* sec. 111.70(1)(d), Stats.

The Federation contends that because of amendments to sec. 111.70[5] adopted subsequent to the *Beloit* decision, we must abandon the "primary relation" test, which the WERC utilized in this case, and adopt a new test[6] to

---

[5] *See* ch. 178, 1977 Wis. Laws.

[6] The Federation specifically urges that we adopt a test in which the WERC initially determines whether a bargaining subject significantly affects wages, hours, and working conditions; if it does, then the WERC determines whether a person selected to be a mediator-arbitrator is qualified to resolve a dispute over that particular subject.

reflect the amendments' alleged effect on the bargaining relationship between municipal employers and employes. Specifically, the Federation asserts that although sec. 111.70 prohibited municipal employe strikes prior to the amendments,[7] such strikes did occur and were realistic bargaining weapons for municipal employes. The Federation contends that the court in *Beloit* attempted to offset the effect of the strike weapon by correspondingly restricting the category of mandatory bargaining subjects to assure that unions had only a limited voice in influencing educational policy.

Because the amendments have strengthened the prohibition against strikes,[8] the Federation asserts that the outcome of collective bargaining disputes is no longer dependent upon the economic strength of the bargaining parties. Thus, the Federation argues that the policies underlying the supreme court's prior approval of the "primary relation" test are no longer applicable to disputes arising under sec. 111.70 (1) (d).

The Federation additionally contends that because of the adoption of compulsory and binding arbitration,[9] the content of a collective bargaining agreement is no longer determined by the parties' bargaining strength but by a mediator-arbitrator, acting as a state agent, who applies statutorily prescribed standards[10] in a process open to public scrutiny.[11] The Federation asserts that the amendments have politicized the public sector collective bargain-

[7] *See* § 111.70 (4) (l), Stats.

[8] Under § 111.70 (7m) (a), Stats., a municipal employer may obtain injunctive relief to stop a prohibited employe strike. Section 111.70 (7m) (c) sets forth penalties for a violation of the strike prohibition.

[9] *See* § 111.70 (4) (cm) 6, Stats.

[10] These standards, which must be considered by the arbitrator, are set forth in § 111.70 (4) (cm) 7, Stats.

[11] The amendments provide two opportunities for public participation in the municipal collective bargaining process. *See* §§ 111.70 (4) (cm) 2 and 111.70 (4) (cm) 6b, Stats.

ing process, and it is therefore no longer necessary to restrict the scope of bargaining out of "concern for the integrity of political processes." *See Unified School District,* 81 Wis. 2d at 99, 259 N.W.2d at 730.

The Federation finally contends that the adoption of compulsory and binding arbitration has encouraged municipal employers to adopt rigid positions on permissive bargaining subjects since only mandatory subjects of bargaining may be submitted to an arbitrator if the arbitration process is invoked. *See* sec. 111.70 (4) (cm) 6a, Stats. Because of these alleged adverse effects on the collective bargaining process, the Federation asserts that the underlying policy of sec. 111.70 (1) (d) has been altered, and it urges the adoption of a test that allows greater flexibility in classifying bargaining subjects as mandatory.

We conclude that the amendments to sec. 111.70 do not warrant adoption of a different test to determine the scope of collective bargaining under sec. 111.70 (1) (d). When our supreme court approved the "primary relation" test, it was construing the language in sec. 111.70 (1) (d). The 1977 amendments to sec. 111.70 did not alter that provision.

There is also nothing in the legislative history of ch. 178, 1977 Wis. Laws, to suggest that the legislature intended to depart from the underlying policy of sec. 111.70 (1) (d), which had prompted the court to approve the "primary relation" test. Although sec. 111.70 (1) (d) imposes a duty to bargain with respect to "wages, hours, and conditions of employment," the legislature also inserted a "management rights" clause, which provides:

The employer shall not be required to bargain on subjects reserved to management and direction of the governmental unit except insofar as the manner of exercise of such functions affects the wages, hours and conditions of employment of the employes.

Such scope restrictions are often included in statutory provisions relating to public sector collective bargaining[12] to ensure limited employe input into decisions concerning the direction and management of governmental services. The language of sec. 111.70(1)(d) evinces a strong legislative intent to restrict the scope of municipal collective bargaining, and the failure to amend this subsection indicates the intent remains unchanged.

The impact of the amendments upon the municipal collective bargaining process also does not support a determination that the underlying policy of sec. 111.70(1)(d) has been significantly altered. Although the legislature may have strengthened the penalties for engaging in prohibited strikes,[13] this does not necessarily result in a significant increase in a municipal employer's bargaining power. As the Federation readily concedes, municipal employe strikes were generally proscribed prior to the amendments. The effect of the amendments therefore is to merely reinforce a prohibition upon which employers had a right to rely prior to the amendments.

The fact that the inclusion of compulsory and binding interest arbitration may have politicized the municipal collective bargaining process has not affected the legislature's decision to vest the management of public schools solely in school boards. School board members, as elected officials, have a different role than their private counterparts because their concerns extend beyond protecting the "core of entreprenurial control." They must also act for the public welfare. *See Unified School District*, 81 Wis. 2d at 99, 259 N.W.2d at 730. Because public employers have a unique role and concurrent responsibilities, the court has stated that the bargaining table is not the appropriate forum to determine issues concerning public policy choices, and that such discussions should

[12] *See* Weisberger, *supra* note 3, at 699.

[13] *See* note 7, *supra*.

be open to resolution through political processes. *Id.* at 99–100, 259 N.W.2d at 730.

Although the amendments to sec. 111.70 have somewhat opened the municipal bargaining process to public input and scrutiny, their effect on municipal collective bargaining is limited. Under sec. 111.70 (4) (cm) 2, meetings between parties to a collective bargaining agreement at which initial bargaining proposals are provided must be open to the public. Failure to comply with this requirement, however, does not invalidate a collective bargaining agreement. Section 111.70 (4) (cm) 2, Stats. Thus, while public participation is encouraged, the bargaining parties may still reach an agreement that has not been publicly scrutinized.

The possibility of public involvement during binding arbitration only occurs if one of the bargaining parties invokes the mediation-arbitration process. *See* sec. 111.-70 (4) (cm) 6. Similarly, the requirement that an arbitrator consider statutorily prescribed standards in rendering a binding decision is applicable only if a party selects binding arbitration as a dispute resolution procedure. The effect of the amendments on the municipal collective bargaining process is insufficient to nullify a still valid concern "for the integrity of political processes." *Unified School District,* 81 Wis. 2d at 99, 259 N.W.2d at 730.

The Federation's contention that the amendments adopting binding arbitration have encouraged employers to remove discussion of permissive subjects from the bargaining table fails to establish significant changes in bargaining strength to require the adoption of a new test. Under sec. 111.70 (1) (d), municipal employers have never been required to bargain about matters unrelated to "wages, hours and conditions of employment." This is consistent with the traditional notion originating in the private sector that a subject classified as permis-

sive imposes no duty to bargain with respect to that subject.[14]

The amendments to sec. 111.70 additionally do not foreclose a discussion of permissive bargaining subjects when the parties request binding arbitration. Under sec. 111.70(4)(cm)6a, final offers submitted to an arbitrator may include permissive subjects, and they will be treated as mandatory subjects if the other party does not object.

Any resultant increase in the employers' bargaining strength could conceivably be offset by a corresponding increase in the employes' strength. Commentators have noted that strike prohibitions, together with mandated impasse resolution procedures (such as binding arbitration) often encourage a union's own recalcitrance by providing incentives for the union to reduce tradeoffs and compromises, and to press numerous demands to impasse.[15] The availability of binding arbitration therefore may provide few inducements for the union to voluntarily accept the employer's position since, if the union loses at arbitration, it will still obtain the employer's final offer.[16] Because there is nothing to suggest that the legislature intended to alter the underlying policy of sec. 111.70(1)(d), and because the impact of the amendments is insufficient to negate the valid concerns surrounding municipal collective bargaining, we conclude that the "primary relation" test remains the appropriate standard.

In reviewing the challenged provisions, the Federation's proposal that any provision that significantly affects wages, hours, and working conditions should be mandatorily bargainable ignores the distinction between a bargaining duty arising from the subject of the provision, and the duty to bargain with respect to the im-

---

[14] See Weisberger, *supra* note 3, at 689.

[15] See Weisberger, *supra* note 3, at 697.

[16] See Mulcahy and Ruesch, *Wisconsin Municipal Labor Laws: A Need for Change*, 64 Marq. L. Rev. 103, 131 n. 71 (Fall 1980).

pact of the application of educational policies on wages, hours, and working conditions. *See Beloit,* 73 Wis. 2d at 54, 242 N.W.2d at 236; sec. 111.70(1)(d), Stats. Both the Federation's challenge and the WERC's ruling directly relate to whether the subject matter of each provision is mandatorily bargainable and do not focus on whether the impact of an educational policy, as applied, is mandatory. We therefore limit our review to whether the subject of each challenged provision is mandatorily bargainable.

STUDENT CONTACT PERIOD
The provision relating to student contact states:

*Student Contact Period*—Fifty-three (53) minutes of instructional time devoted to instruction in the presence of the student.

The WERC held this provision is permissive because it relates to educational policy and is not primarily related to wages, hours, and working conditions.

The Federation contends that because teachers have a recognized right to negotiate over in-service days, *see Board of Education v. WERC,* 52 Wis. 2d 625, 633, 191 N.W.2d 242, 246 (1971), they also must have the right to bargain over instructional hours. The Federation additionally asserts that the purpose of the challenged provision is to ensure that teachers have a seven-minute break between classes, and that the provision is therefore mandatorily bargainable.

We have applied the "any rational basis" rule, and we conclude that the WERC's determination that the provision is not primarily related to wages, hours, and working conditions has a rational basis. Nothing in the specific language suggests that the purpose is to provide teachers with a seven-minute break; rather, the provision relates to the amount of time a teacher should allocate in

performing the major instructional duty the teacher was hired to do. The time spent in direct student contact affects the quality of education, which is a matter of educational policy.

The Federation's contention that the provision focuses on a seven-minute break period for teachers additionally assumes that a period including both instructional and break time would be limited to sixty minutes. There is nothing in the language, however, which would preclude fifty-three minutes of student contact time followed by, e.g., a ten-minute break, for a total period of sixty-three minutes. The provision relates only to instructional time in the student's presence and does not either refer to or determine the length of a teacher's break. Because we conclude that the WERC's determination has a rational basis, we affirm.

DISCUSSION OF POLICIES[17]

The amicus challenges a WERC determination relating to the following provision:

The Board, or its representatives, shall meet, from time to time, with the representatives of the Federation, at the request of either party, to discuss matters of educational policy and development, as well as matters relating to the implementation of this Agreement.

The WERC held that the language pertaining to the requirement that the District meet with the Federation

---

[17] Although the Federation did not specifically address this provision in its brief, the notice of appeal states that the Federation is appealing from the circuit court's order that affirmed the WERC's declaratory ruling. The ruling had specifically discussed this provision, and the circuit court's memorandum decision refers to "meetings on educational policy and development" as one of the issues for review. The court, however, did not further discuss this provision. Because of the ambiguity concerning the preservation of this issue for appeal and the fact that the amicus has fully briefed issues relating to this provision, we will review those issues.

to discuss educational policy matters is a permissive subject of bargaining. The WERC based its conclusion on the decision in *Unified School District,* which held that, "curriculum content was not subject to bargaining because it was '. . . within the scope of basic educational policy.' " *Id.,* 81 Wis. 2d at 103, 259 N.W.2d at 732, *citing Joint School District No. 8 v. WERB,* 37 Wis. 2d 483, 493, 155 N.W.2d 78, 82 (1967).

Amicus contends that the language is mandatory because it does not require the District to bargain with respect to educational policy matters but requires the Board only to meet with the Federation to discuss such issues. Amicus additionally argues that the WERC's holding impedes its exercise of a constitutional right to discuss educational policy matters with the school board. *See City of Madison, Joint School District No. 8 v. WERC,* 429 U.S. 167 (1976).

We have applied the "any rational basis" rule and we affirm the WERC's determination that this provision is a permissive subject of bargaining. As the court noted in *Beloit,* a teachers' association "may also be heard as to matters of school and educational policies, but it makes such contribution or input along with other groups and individuals similarly concerned," and this input is appropriately expressed through political processes. *Beloit,* 73 Wis. 2d at 52, 242 N.W.2d at 235.

There is also a rational basis for the WERC's conclusion that the distinction between a provision relating to educational policy content and one requiring discussion of such policies is insufficient to render the latter a mandatory subject of bargaining. A requirement that the District meet and discuss educational policies with the Federation does not primarily relate to wages, hours, and working conditions; rather, it involves the formulation of educational policies, which is a management prerogative. We therefore affirm the WERC's holding.

## DISCUSSION OF POLICIES THROUGH GRIEVANCE PROCEDURE

The disputed provision relating to discussion of educational policies and practices states:

1. A grievance is a complaint by an employee of the bargaining unit, or by the Federation where:
   (a) A policy or practice is alleged to be improper or unfair, or
   (b) There has been an alleged deviation from, an alleged misinterpretation, or an alleged misapplication of a practice or a policy, or
   (c) There has been an alleged unfair or inequitable treatment by reason of an act or condition contrary to existing policy or practice, or
   (d) There has been an alleged violation, misinterpretation, or misapplication of any agreement existing between the parties hereto.

Both the District and the Federation agree that paragraph (d) is mandatorily bargainable. The District contends, however, and the WERC concurred that paragraphs (a) through (c) are permissive because they do not limit the scope of grievance arbitration to policies primarily related to wages, hours, and conditions of employment or to the impact of policies on wages, hours, and working conditions.

Both the Federation and the amicus assert that the provision is mandatory because it relates to the application of policies and practices to employes. They additionally contend that, contrary to the concern expressed by the circuit court, the following clause in the collective bargaining agreement relating to the grievance procedure would preclude an arbitrator from altering educational policies or practices:

No decision or adjustment of a grievance shall be contrary to any provisions of this Agreement existing between the parties hereto.

The federation finally argues that our supreme court has recognized teachers' rights to advise the school board of their views concerning educational policy and school management. *See id.* at 51–52 n. 7, 242 N.W.2d at 235 n. 7. Because this right of expression is allegedly a condition of employment, the Federation contends that the entire provision is mandatorily bargainable.

■
We conclude that there is a rational basis for the WERC's determination that this provision is permissive. As the circuit court noted, the language in this provision would allow submission to the grievance-arbitration procedure of issues concerning educational policy and school management not primarily related to wages, hours, and working conditions. Although in *Beloit* our supreme court recognized the importance of faculty input into the formulation of educational policy, the court also noted that the bargaining table is the wrong forum to pursue such discussions. *See id.* at 52 n. 8, 242 N.W.2d at 235 n. 8. Similarly, because the grievance-arbitration procedure is not analogous to an "ordinary political process," *see id.,* it is an inappropriate forum to discuss matters primarily unrelated to wages, hours, and employment conditions.

Although the provision includes grievances relating to the potential misapplication of policies, the possibility still exists that an arbitrator would have to interpret a particular policy not primarily related to wages, hours, and conditions of employment. The fact that the agreement precludes an arbitrator from rendering a decision that conflicts with the collective bargaining agreement provides no guarantee that the arbitrator will refrain from modifying an educational policy not contained in the agreement. Because the WERC's holding has a rational basis, we affirm.

## FAIR PRACTICES

The disputed provision relating to fair practices is contained in the following sections:

*Section A.* The Board shall not discriminate against any employee on the basis of race, creed, national origin, sex, age, marital status, political affiliation, or membership in or association with the activities of any employee organization.

*Section B.* The Board shall make certain that teacher application forms and oral interview procedures shall omit therefrom any reference to items listed in Section A above.

Both the District and the Federation agree that Section A is mandatorily bargainable. They disagree, however, on the classification of Section B.

The WERC held that although the creation of data specified in Section B could arguably relate to working conditions, such relation would be slight when compared to the effect on the District's management functions of conducting interviews and constructing job applications. The WERC additionally noted that the Federation's interest in preventing the creation of such data because of potential misuse was too speculative when compared to the District's interest in obtaining this data. The WERC therefore held that the provision was a permissive subject of bargaining.

The Federation contends that the provision is a means to effectuate the purpose of Section A and to assure that employes are not subjected to discrimination. The Federation asserts that Section B is therefore mandatorily bargainable.

We conclude that the WERC's determination that Section B does not primarily relate to wages, hours, and working conditions has a rational basis. The provision relates to the job interview process and the job applica-

tion format, both of which are traditional management concerns. In addition, the District has a legitimate interest in collecting such data to satisfy governmental reporting requirements and to fulfill affirmative action requirements. As the WERC observed, this valid interest outweighs the Federation's speculative interest in preventing the creation of this data because of potential misuse. We therefore affirm the WERC's holding that Section B is a permissive subject of bargaining.

### CLASSROOM DISCIPLINE

The WERC held that the following provision relating to classroom discipline is a permissive subject of bargaining:

It shall be the duty and responsibility of each teacher to maintain proper class discipline. Every teacher shall have the right to dismiss from class any student causing serious disruption to classroom proceedings.

In its determination, the WERC primarily relied on the following analysis, which it had used in its 1974 ruling and which was upheld by our supreme court in *Beloit:*

The behavior of students in a classroom, particularly to the extent that it presents a physical threat to the teacher's safety, is a condition of employment. Thus, proposals that go to such matters are mandatory subjects of bargaining. . . . Misbehavior of students that does not involve threats to physical safety is not a condition of employment and therefore, is a permissive subject of bargaining.

*See also id.* at 60–61, 242 N.W.2d at 239. The WERC concluded that because the disputed provision is not limited to situations involving physical threats to teacher safety, it is not mandatorily bargainable under the rationale affirmed by the court in *Beloit.*

The Federation urges that the WERC's holding be set aside; however, the Federation contends that the record

is insufficient to warrant an opposite holding that the provision is mandatorily bargainable. The Federation specifically argues that if teachers may be disciplined for failing to maintain classroom discipline, the provision is mandatory. The specific language, however, contains no reference to disciplinary action for a teacher's failure to control classroom disruptions. The provision additionally does not refer to disruption involving threats to a teacher's physical safety, and is not limited to situations involving such threats. *See id.* at 60–61, 242 N.W.2d at 239. We therefore affirm the WERC's holding that under the decision in *Beloit,* this provision is a permissive subject of bargaining.

STAFF HANDBOOK

The challenged provision relating to the staff handbook provides:

Any Professional Staff Handbook is considered not to apply to those rights, benefits, and responsibilities which are covered by this agreement between the Federation and the Board.

The WERC found the language too ambiguous to determine whether the provision is mandatorily bargainable.

The Federation argues that the provision clearly means the handbook cannot supersede the collective bargaining agreement, and it is therefore a mandatory subject of bargaining. The Federation additionally contends that any ambiguity in the wording must be resolved in favor of finding the provision mandatorily bargainable.

We conclude that there is a rational basis for the WERC's conclusion that the provision is ambiguous because it is open to varying interpretations. As the WERC stated, if the provision means that in a conflict between the handbook and the collective bargaining agreement the latter shall govern, "the provision should so state." If the provision means that the handbook will

not apply to provisions in the agreement but the school board still has the option to include other provisions in the handbook relating to wages, hours, and working conditions, the provision would be mandatory. If, however, the provision means that the handbook is inapplicable to provisions in the agreement but could contain provisions relating to educational policy and school management, the provision would be permissive.

The Federation argues that we should presume the provision is mandatory and if the language needs clarification, we must do so to ensure that the provision is mandatory. The Federation cites *Beloit* to support its contention that we may sua sponte modify the language. The holding in *Beloit* does not support this assertion. The court in *Beloit* only affirmed a circuit court judgment, which required the WERC to insert a reasonable clarification in the collective bargaining agreement if proposed by the school board. *Id.* at 59, 242 N.W.2d at 239. That decision does not suggest that it is within our province, on appellate review, to modify or to order a clarification of a contractual provision. We also note that there is nothing in the legislative history of sec. 111.70(1)(d) to support a presumption that ambiguous bargaining proposals must be construed as mandatorily bargainable. We therefore affirm the WERC's determination that the provision, as worded, is too ambiguous to allow a definitive ruling.

## CLERICAL ASSISTANCE

The Federation contends that a provision relating to supplying clerical assistance to teachers is a mandatory subject of bargaining. The provision states, in pertinent part:

Clerical assistance shall be provided for teachers to type tests, school business letters, prepare dittos, operate

copy machines, prepare transparencies and other duties related to the instructional process.

The WERC found that the provision would require the District to provide aides to perform clerical duties, which is related to school management and operation. The WERC therefore held the provision is permissive.

We affirm the WERC's determination that the provision is not mandatorily bargainable. A determination of how much staff is required and a decision whether to provide teaching personnel with clerical assistance are basic management prerogatives. The provision does not mandate that teachers perform clerical duties; rather, it imposes an obligation on the District to provide clerical assistance. Such an obligation clearly relates to the operation of the school system, and it is not primarily related to wages, hours, and working conditions. We therefore defer to the WERC's determination.

## ACADEMIC FREEDOM AND RESPONSIBILITY

The challenged provision relating to academic freedom and responsibility states:

1. The policy of the District is to encourage the teaching, investigating and publishing of findings in an atmosphere of freedom and confidence.
2. This philosophy is based on the belief that when students have the opportunity to learn and acquire knowledge from a variety of sources and opinions in an atmosphere of honest and open inquiry, they will develop greater knowledge and maturity of judgment.
3. Therefore, the freedom of each teacher to present within his classroom the truth as he understands it in relation to his area of professional competence is essential to the purposes of our school and society and shall continue to be upheld by the Board and the administration.

4. When the teacher speaks or writes as a citizen, he shall be free from administrative and school censorship and discipline. However, the teacher has the responsibility to clarify the fact that he speaks as an individual and not in behalf of the school.

The WERC determined that this entire provision is a permissive subject of bargaining. The WERC stated that the first three paragraphs relate to educational policy and are not primarily related to wages, hours, and working conditions. Although the WERC conceded that the language in paragraph four concerning employe discipline relates to working conditions, it held that the intent of the paragraph is to protect the rights of teachers as citizens, and not as employes. The WERC additionally stated that enforcement of citizens' constitutional rights is "properly sought in the courts, rather than in forums established to resolve disputes relating to the enforcement of collective bargaining agreements." It therefore concluded that paragraph four is also a permissive subject of bargaining.

Both the Federation and amicus assert that all paragraphs, when read together, create a scheme of protection for teachers' constitutional rights. They contend that the provision seeks to protect teachers, as employes, from disciplinary action for the exercise of first amendment rights both on and off the job. Because protection from employment-related disciplinary action allegedly involves a condition of employment, they argue that the entire provision is mandatorily bargainable.

In affirming the WERC's holding, the circuit court found that the first three paragraphs clearly relate to the educational policy of encouraging open discussion and debate in the classroom. Although the court agreed that paragraph four protects a teacher as a citizen and not as a staff member, it disputed the WERC's conclusion that the last paragraph relates to discipline. The court noted that paragraph four imposes no duty upon teach-

ers to exercise their first amendment rights as citizens; thus, the court apparently determined that the risk of discipline was only a concern when teachers had some duty that might trigger disciplinary action.

The court additionally agreed that the bargaining table is an inappropriate forum to argue first amendment rights because of the difficulties inherent in the subject matter. The court therefore affirmed the WERC's holding.

We affirm the WERC's determination that the first three paragraphs are permissive. Because we conclude that the WERC's holding as to paragraph four has no rational basis, however, we do not defer to its determination. Even if we accord "due weight" to the WERC's holding, *see Beloit,* 73 Wis. 2d at 68, 242 N.W.2d at 243, we determine that paragraph four is primarily related to wages, hours, and working conditions and is therefore mandatorily bargainable.

The first three paragraphs obviously relate to general policies supporting academic freedom and the importance of open discussion to the learning process. There is no language relating to disciplinary action for a teacher's exercise of his first amendment rights at work and in the classroom. Because the first three paragraphs do not primarily relate to wages, hours, and working conditions, they are not mandatorily bargainable.

Paragraph four contains three parts: First, that the teacher shall be free from school discipline when the teacher speaks or writes as a citizen; second, that the teacher shall be free from school censorship when engaging in such activity; third, that the teacher must clarify that he speaks on his own behalf. Although part three imposes a responsibility upon the teacher, it says nothing about the possibility of sanctions if the teacher

does not comply, and it only peripherally relates to working conditions.

The other parts, however, relate to a teacher's employment conditions, since they refer to sanctions that could be imposed on a teacher only because of the employment relationship. Although paragraph four does reflect concern for citizens' first amendment rights, its primary focus is on an employe's right to be free from employer-imposed sanctions for the exercise of rights that may be constitutionally protected. The possibility of discipline or censorship relates to a teacher's working conditions.

The fact that paragraph four applies to a teacher's exercise of first amendment rights only as a citizen does not mean it is primarily unrelated to employment conditions. If a teacher speaks or writes as a citizen and is subsequently disciplined or censored by his employer for engaging in such activity, the result is as devastating as if the teacher had been disciplined for making certain statements in the classroom. Employer-imposed discipline threatens job security and is primarily related to a teacher's conditions of employment.

The circuit court nevertheless concluded that paragraph four does not even relate to employe discipline because a teacher may choose to refrain from speaking or writing as a citizen and thus avoid disciplinary action. If a teacher exercises constitutionally guaranteed rights in an atmosphere of fear that he may be disciplined or censored by his employer, there is still a negative effect on that teacher's conditions of employment. We therefore do not agree that disciplinary action is only meaningful when it is triggered by the violation of a duty.

We do concur with the Federation's assertion that the bargaining table is a proper forum to resolve disputes concerning the possibility of employer-imposed discipline or censorship for an employe's exercise of first

amendment rights. The fact that the activity triggering the sanctions involves a theoretically difficult area of law is insufficient to remove such issues from the bargaining table. The availability of courts as alternative forums to resolve constitutional law disputes also does not preclude the resolution of the underlying issues at the bargaining table, since that forum is competent to determine issues involving potential employe sanctions. Further, the bargaining table is often faster and less expensive than court adjudication and therefore could prove to be a more efficient forum. We therefore reverse the WERC's holding as to paragraph four.

*By the Court.*—Order affirmed in part and reversed in part.

GARTZKE, P.J. *(dissenting)*. I dissent from the majority's conclusion that WERC's ruling on the fourth paragraph, relating to academic freedom and responsibility, has no rational basis. I do not join the majority's dictum that employer-imposed discipline is primarily related to working conditions and is therefore mandatorily bargainable.

The "primarily related" test established in *Beloit Education Asso. v. WERC,* 73 Wis. 2d 43, 242 N.W.2d 231 (1976), means that where "the governmental or policy dimensions of a decision *predominate,* the matter is properly reserved to decision by the representatives of the people." *Unified S.D. No. 1 of Racine County v. WERC,* 81 Wis. 2d 89, 102, 259 N.W.2d 724, 732 (1977) (emphasis added). The school board is that representative.

Our permissible review of WERC's ruling is limited to whether that agency had a rational basis for its decision. That standard requires us to affirm a rational ruling, whether or not we would have made the same ruling. It is therefore immaterial that we are capable of providing a rational basis for a contrary ruling.

WERC had a rational basis for its decision. WERC said in the memorandum opinion accompanying its findings of fact, conclusions and ruling:

While paragraph 4 involves employe discipline, it seeks to protect rights of teachers as citizens, rather than the protection of rights of teachers as employes. Enforcement of constitutional rights of citizens are properly sought in the courts, rather than in forums established to resolve disputes relating to the enforcement of collective bargaining agreements. Since paragraph 4 only peripherally relates to working conditions (discipline), it, as written, relates to a non-mandatory subject of bargaining.

The majority of this court have also provided a rational basis for holding that the paragraph primarily relates to teachers' conditions of employment. That is not the point. As appellate judges we must affirm WERC's ruling because it has a rational basis.

The majority's dictum—that employer-imposed discipline "is primarily related to a teacher's conditions of employment"—may be thought to usurp WERC's function in the future. Merely connecting a proposal with discipline cannot, of itself, make the proposal *primarily* related to employment conditions. Discipline is imposed for a reason. The reason originates in management policy. School management is the school board's province under sec. 111.70(1)(d), Stats. Accordingly, employer-imposed discipline relates both to employment conditions and to school management. Whether a particular provision connected with discipline relates primarily to one area and peripherally to another area is debatable. WERC ought not be precluded by a dictum from deciding which area is predominantly affected.