MARLENE A. CUMMINGS, Secretary Department of Regulation and
Licensing
On behalf of the Funeral Directors Examining Board, you request my opinion as to the interpretation of section 445.12(6), Stats., as it relates to the ownership of funeral establishments and cemeteries in Wisconsin by separate corporate entities which, in turn, are wholly owned subsidiaries of a parent corporation.
Section 445.12(6) provides:
 No licensed funeral director or operator of a funeral establishment may operate a mortuary or funeral establishment located within the confines of, or connected with, any cemetery. No licensed funeral director or his or her employe may, directly or indirectly, receive or accept any commission, fee, remuneration or benefit of any kind from any cemetery, mausoleum or crematory or from any proprietor or agent thereof in connection with the sale or transfer of any cemetery lot, entombment vault, burial *Page 6 
privilege or cremation, nor act, directly or indirectly, as a broker or jobber of any cemetery property or interest therein.
You state that the board has historically construed the statute to prohibit ownership of both a funeral establishment and a cemetery by the same person or entity. Construction of a statute by an administrative agency responsible for applying it is entitled to great weight and will be upheld if it is a rational statutory construction. Blackhawk Teachers Federation v. WERC,109 Wis.2d 415, 326 N.W.2d 247 (Ct.App. 1982).
35 Op. Att'y Gen. 186, 187-88 (1946), stated that the statute "was apparently intended to prevent funeral directors from acquiring an interest adverse to their clients in the purchase of cemetery lots, vaults, etc., through `kickback' agreements with cemeteries, mausoleums and crematories."
An attorney general's interpretation of a statute is entitled to great weight when the Legislature subsequently amends the statute but leaves intact that part interpreted by the attorney general. Town of Vernon v. Waukesha County, 99 Wis.2d 472,299 N.W.2d 593 (Ct.App. 1980), aff'd, 102 Wis.2d 686,307 N.W.2d 227 (1981). In this case, section 445.12 was amended several times after the issuance of the 1946 opinion without materially changing that portion of the statute interpreted by the attorney general.
Therefore, it is my opinion that the Funeral Directors Examining Board's construction that the statute proscribes ownership of a funeral establishment and a cemetery by the same person or entity is a correct interpretation.
Your inquiry springs from a concern under the following facts recited in your letter:
 Service Corporation International (SCI) is a corporation operating out of Houston, Texas. SCI has numerous holdings nationwide, including funeral establishments and cemeteries. SCI has established several operating divisions, with its Cemetery Division being located in San Diego, California, *Page 7 
and its Funeral Division in Houston, Texas. Recently, one of SCI's wholly owned subsidiaries, Funeral Corporation Wisconsin (FCW), purchased all of the issued and outstanding stock of a funeral establishment located in Beloit, Wisconsin. At that time, SCI also held all the preferred and common stock in a cemetery located in Appleton, Wisconsin. Furthermore, SCI through its wholly owned subsidiary Wisconsin Cemetery Services, Inc. (WCS), recently acquired all of the issued and outstanding capital stock of a cemetery in Oshkosh, Wisconsin.
The only additional information supplied (by the attorney for the corporations involved) is that subsidiary corporations FCW and WCS have separate officers and directors, have no written or formal agreements with each other and both report to separate divisions of SCI, the parent corporation.
The general rule is that stock ownership of the subsidiary by the parent corporation, by itself, does not destroy the separate corporate identities of the parent and subsidiary. Miller v.Robertson, 266 U.S. 243 (1924). With the exception of one case,United States v. United Shoe Machinery Co., 234 F. 127 (E.D. Mo. 1916), involving a violation of the Clayton Act, the reported cases all adhere to the rule that stock ownership alone does not make the parent and subsidiary corporation legally one. Richmond I. Const. Co. v. Richmond, N., I. B. R. Co., 68 F. 105, 109
(6th Cir. 1895); East St. Louis Connecting Ry. Co. v. Jarvis,92 F. 735 (7th Cir. 1899). See also cases listed or discussed at 38 A.L.R. 3d 1102, 1123-27, para. 10.
Conversely, if the parent corporation so controls the subsidiary with respect to its finances, policies, functions and practices so that it can be said that the subsidiary has no mind of its own, the separate corporate identities of the parent and subsidiary will be disregarded. Forest Home Dodge, Inc. v. Karns,29 Wis.2d 78, 138 N.W.2d 214 (1965); Edgar v. Fred JonesLincoln-Mercury, Etc., 524 F.2d 162 (10th Cir. 1975). Also seeWiebke v. Richardson Sons, Inc., 83 Wis.2d 359, 265 N.W.2d 571 *Page 8 
(1978); Consumer's Co-op of Walworth v. Olsen, 142 Wis.2d 465,419 N.W.2d 211 (1988).
Several theories have been used to disregard the accepted legal fiction of the separate identity of wholly owned subsidiary corporations, including (1) an agency theory where the subsidiary corporation is so organized that it is merely an instrumentality or adjunct of the parent corporation, Chicago, M. St. P. Ry.Co. v. Minneapolis Civic C. Ass'n, 247 U.S. 490 (1918), (2) an alter ego theory where the subsidiary corporation is a mere business conduit for the parent corporation or where there is such a unity of ownership and interest that the separate identity of the parent and subsidiary does not exist, Marr v. Postal UnionLife Ins. Co., 40 Cal. App. 2d 725, 105 P.2d 649 (1940), and (3) an "instrumentality" theory where it can be shown that the parent controls and utilizes the subsidiary to commit a wrong, including violation of statutory mandates or duties. Wiebke. Also see Cherv. Forum Intern., Ltd., 692 F.2d 634 (9th Cir. 1982).
Which theory applies in a particular case depends upon the relevant facts or the jurisdiction involved but regardless of the particular theory used, if the evidence shows that the separateness does not exist in fact, the separate corporate identities will be legally disregarded.
No single factor or circumstance is conclusive on the issue of whether a subsidiary corporation exists separately from its parent. Sabine Towing Transp. Co. v. Merit Ventures, Inc.,575 F. Supp. 1442 (E.D. Tex. 1983). Whether separate corporate identities between the parent and subsidiary exist is resolved through an examination of the totality of circumstances involved in the particular case.
One of the factors that may be considered is, of course, the stock ownership by the parent corporation. Talen's Landing Inc.v. M/V Venture, 656 F.2d 1157 (5th Cir. 1981). Evidence of the parent corporation's control of, or unity of interest with, the subsidiary may also be considered. Krivo Industrial Sup. Co. v.National Distill. Chem. Corp., 483 F.2d 1098 (5th Cir. 1973), *Page 9 reh'g denied, 490 F.2d 916 (5th Cir. 1974). Common officers or directors of the parent and subsidiary would also be considered relevant evidence, Talen's Landing, as well as domination by the parent in the finances, policy and practices of the subsidiary,Edgar.
Courts have also considered the fact that the parent corporation pays the salaries of the personnel and the expenses of the subsidiary. C M Corp. v. Oberer Development Co., 631 F.2d 536
(7th Cir. 1980). In this respect, evidence concerning personnel decisions including promotions, benefits, etc., of the subsidiary employes would also be relevant. Whether the subsidiary has adequate capitalization has also been considered relevant evidence to the issue. Olsen. Also see Nelson v.International Paint Co., Inc., 734 F.2d 1084, reh'g denied,739 F.2d 633 (5th Cir. 1984).
Sabine Towing lists fifteen factors which I consider to be a nonexclusive list. They are: common or overlapping stock ownership between the parent and subsidiary; common or overlapping directors and officers; use of same corporate office; inadequate capitalization of the subsidiary; financing the subsidiary corporation by the parent; whether the parent existed solely as a holding company for its subsidiaries; the parent's use of the subsidiary's property and assets as its own; the nature of intercorporate loan transactions; incorporation of the subsidiary being caused by the parent; whether the parent and subsidiary file consolidated income tax returns; decision-making for the subsidiary made by the parent and its principals; whether the directors of the subsidiary act independently in the interest of the subsidiary or in the interest of the parent; the making of contracts between the parent and the subsidiary that are more favorable to the parent; observance of formal legal requirements; and the existence of fraud, wrong-doing or injustice to third parties.
Whether the circumstances involving SCI, WCS and FCW are such that their separate corporate identities should not be recognized is a factual question to be decided within the legal framework I have just summarized. It is obvious that all of the *Page 10 
elements of proof that might touch upon the factors that may be considered in resolving the issue have not been presented or evaluated. Thus, the issue cannot be resolved by this opinion.
Nevertheless, the facts presented are insufficient to warrant a conclusion that the separate identities of the subsidiary corporations should be disregarded and that the statute is violated.
DJH:WHW *Page 11