SAFRANSKY, Appellant, v. PERSONNEL BOARD, Respondent.

*No. 349. Argued February 5, 1974.—Decided March 5, 1974.*
(Also reported in 215 N. W. 2d·379.)

468

For the appellant there was a brief and oral argument by *Todd J. Mitchell* of Milwaukee, and *David Adamany* of Madison.

For the respondent the cause was argued by *Robert J. Vergeront,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HANLEY, J.   Two issues are presented on this appeal:

1.   Whether there is substantial evidence to show that the appellant is chargeable with the conduct complained of, and

2.   Whether there is substantial evidence to show that such conduct, if true, constitutes just cause for discharge.

The procedure involved in an appeal by an employee with permanent status is clear. Sec. 16.05 (1) (e), Stats., states that jurisdiction lies with the State Personnel Board to determine whether the actions of the appointing authority terminating an employee of permanent status is based on just cause. The board must determine whether the discharged employee was actually guilty of the misconduct cited by the appointing authority and whether such misconduct constitutes just cause for discharge. *Bell v. Personnel Board* (1951), 259 Wis. 602, 49 N. W. 2d 889.

". . . [T]he appointing officer must present evidence to sustain the discharge and has the burden of proving that the discharge was for just cause. ( p. 132)

". . .

"The function of the board is to make findings of fact which it believes are proven to a reasonable certainty, by the greater weight of the credible evidence." (p. 137) [1]

[1] *Reinke v. Personnel Board* (1971), 53 Wis. 2d 123, 191 N. W. 2d 833.

The credibility of the witnesses and the weight of the evidence are matters which exclusively lie in the province of the board. *Stacy v. Ashland County Department of Public Welfare* (1968), 39 Wis. 2d 595, 159 N. W. 2d 630.

On appeal to this court, the standard of review is whether the findings of the State Board of Personnel are supported by substantial evidence in view of the record as a whole. *Reinke v. Personnel Board, supra.*

The board found that the appellant had on occasion discussed his homosexual activities and associations in the presence of the institution's patients. Testimony concerning these discussions was elicited from numerous members of the staff at Southern Colony. The testimony was uncontradicted that Paul Safransky discussed his homosexual attitudes in the presence of the residents of Southern Colony. It is uncontradicted that Safransky labeled another co-worker a lesbian in the presence of residents who were capable of understanding the meaning of such a term.

At the hearing additional testimony was elicited concerning the fact that Safransky wore feminine makeup while employed at Southern Colony. It was testified to that the appellant once grabbed the leg of a male co-worker. This action by the appellant resulted in questions from his patients as to his actions. Such acts were admitted by the appellant.

The board made a finding "that homosexual activity is contrary to the generally recognized and accepted standards of morality." No evidence was submitted as to this finding. Therefore, the finding is not supported by the evidence.

We are satisfied that there is credible evidence to support all the findings of the board with the exception of the finding as to the accepted standards of morality. As to the board's finding that homosexuality is contrary

to the accepted standards of morality, we hold that whether homosexuality is immoral or not is irrelevant to the determination of "just cause."

Having determined that the evidence is sufficient to support the board's finding as to the conduct complained of, this court must determine whether such conduct constitutes "just cause" for dismissal.

The court has previously defined the test for determining whether "just cause" exists for termination of a tenured municipal employee as follows:

". . . one appropriate question is whether some deficiency has been demonstrated which can reasonably be said to have a tendency to impair his performance of the duties of his position or the efficiency of the group with which he works. The record here provides no basis for finding that the irregularities in appellant's conduct have any such tendency. It must, however, also be true that conduct of a municipal employee, with tenure, in violation of important standards of good order can be so substantial, oft repeated, flagrant, or serious that his retention in service will undermine public confidence in the municipal service." *State ex rel. Gudlin v. Civil Service Comm.* (1965), 27 Wis. 2d 77, 87, 133 N. W. 2d 799.

Courts of other jurisdictions have required a showing of a sufficient rational connection or nexus between the conduct complained of and the performance of the duties of employment.[2]

The basis for such a requirement of "just cause" or rational nexus is between conduct complained of and its deleterious effects on job performance as constituting grounds for termination of tenured government employees has been to avoid arbitrary and capricious action on the

---

[2] *See: Norton v. Macy* (D. C. Cir. 1969), 417 Fed. 2d 1161; *Richardson v. Hampton* (D. C. D. C. 1972), 345 Fed. Supp. 600; *Wentworth v. Laird* (D. C. D. C. 1972), 348 Fed. Supp. 1153; *Morrison v. Board of Education* (1969), 1 Cal. 3d 214, 82 Cal. Rptr. 175, 461 Pac. 2d 375.

part of the appointing authority and the resulting violation of the individual's rights to due process of law. Only if the employee's misconduct has sufficiently undermined the efficient performance of the duties of employment will "cause" for termination be found.

In determining whether "cause" for termination exists, courts have universally found that persons assume distinguishing obligations upon the assumption of specific governmental employment. Conduct that may not be deleterious to the performance of a specific governmental position—*i.e.*, a department of agriculture employee—may be extremely deleterious to the performance of another governmental occupation—*i.e.*, teacher or houseparent in a mental ward. Thus it is necessary for this court to determine the specific requirements of the individual governmental position.

In the instant case, the appellant was charged with the duties of care, training and supervision of mildly and moderately retarded teen-age boys. It was the duty of the appellant to emulate parentship and present a code of conduct that the residents of Southern Colony could copy. He was to represent and project to the patients an appropriate male image consistent with that experienced by the remainder of society.

One specific aspect of the responsibilities of the houseparent was to direct the patients to a proper understanding of human sexuality. Such an understanding required the projection of the orthodoxy of male heterosexuality. Consistent with the projection of the normalcy of heterosexuality by the houseparent was the requirement that he project the unorthodoxy of male homosexuality to the patients under his care.

It was the finding of the Board of Personnel that the appellant failed to comply with the above-described requirements of the job of houseparent. It was also their finding that the conduct of Safransky complained of had a substantial adverse effect in the performance of his

job duties. His discussions concerning his homosexual associations and activities in the presence of residents constituted an adverse influence to the proper performance of his position duties—namely, the projection of the orthodoxy of male heterosexuality. We are satisfied that such findings are supported by substantial evidence. The deleterious effect on proper job performance is obvious. An individual fulfilling the position of houseparent cannot discuss homosexuality in the presence of his wards without at least communicating an idea of tacit approval of such action. The patients are all too vulnerable to accept as orthodox those ideas propounded by their houseparent. Likewise, the labeling of another houseparent as lesbian—a term which the patients could understand—in the presence of the residents could not be said to have projected a proper understanding of orthodox sexuality.

The unorthodox attitudes of Mr. Safransky were similarly projected with deleterious effects on several other occasions. The incident of grabbing of another houseparent's leg caused questions from the patients concerning Safransky's actions. The donning of feminine face makeup, including eye shadow, mascara and tinted base caused comments from some of the residents as to Mr. Safransky's "strangeness." Such actions were entirely inconsistent and substantially deleterious to the effective performance of the job of houseparent at Southern Colony.

The appellant claims that his off-duty association with other homosexuals is constitutionally protected. While such may be the case, this court need not herein determine whether mere association with other homosexuals during off-duty hours is constitutionally guaranteed.[3] The ap-

---

[3] See: *Acanfora v. Board of Education of Montgomery County* (D. C. Md. 1973), 359 Fed. Supp. 843; *Wood v. Davison* (D. C. Ga. 1972), 351 Fed. Supp. 543.

pellant was terminated for activities performed while on duty. Such being the case, the appellant's off-duty associations and activities are not in issue. Likewise, the question of whether an individual may be terminated solely for his homosexual status is not an issue and need not be determined.

The appellant's claim that his dismissal for on-duty self-avowal of homosexuality and discussions of his homosexual life-style is a denial of his first amendment right of free speech cannot be sustained. Recently, this court ruled that an individual's first amendment rights are necessarily limited by the manner and place of their exercise. This being true, the court in *State v. Elson* (1973), 60 Wis. 2d 54, 208 N. W. 2d 363, ruled that despite the fact that defendant's actions came within the general area protected by the first amendment, the fact that he chose to exercise that right in a mental ward excepted his conduct from constitutional protection.

"Defendant's conduct might be tolerated under different circumstances such as a confrontation on a public street. It cannot be tolerated in a mental hospital ward in the presence of numerous patients." *Supra,* at page 61.

Similarly, in *Acanfora v. Board of Education of Montgomery County, supra,* the court upheld the transfer of a known homosexual teacher from a classroom teaching position to a nonteaching position because of his unrestrained off-duty advocacy of his homosexual way of life. The court reasoned that though such speech is generally constitutionally protected, such unrestrained exercise of that right under certain circumstances may constitute grounds for termination or discharge.

"The instruction of children carries with it special responsibilities, whether a teacher be heterosexual or homosexual. The conduct of private life necessarily reflects on the life in public. There exists then not only

a right of privacy, so strongly urged by the plaintiff, but also a duty of privacy. It is conceded that it would be improper for any teacher to discuss his sex life in the school environment. . . .

"As a result of the distinguishing obligations which a person assumes upon signing a contract to teach children, the standard must shift to accord with the goals of the educational process. The question becomes whether the speech is likely to incite or produce imminent effects deleterious to the educational process. Such speech is not within the bounds of the 'protectable' and the Board of Education is not precluded from taking reasonable action with respect to it." *Supra,* at pages 855, 856.

Because of the teacher's impropriety in advancing his sexual tendencies during off-duty time, the court upheld the action of the board of education.

We conclude that there is substantial evidence in view of the entire record to sustain the decision of the board upholding appellant's discharge. The record also supports the finding that the appellant's actions constituted just cause for discharge.

*By the Court.*—Judgment affirmed.