WEAVER, President, University of Wisconsin System, Respondent, v. WISCONSIN PERSONNEL BOARD, Appellant.

*No. 588 (1974). Argued October 30, 1975.—*
*Decided January 20, 1976.*
(Also reported in 237 N. W. 2d 183.)

For the appellant there was a brief by *Victor A. Miller,* attorney general and *John William Calhoun,* assistant attorney general, and a joint reply brief by *Bronson C. La Follette,* attorney general, *John William Calhoun,* assistant attorney general, and *Lawton & Cates* of Madison for Kent H. Mayes; oral argument by *John William Calhoun,* assistant attorney general, and *Richard V. Graylow* of *Lawton & Cates* for Kent H. Mayes.

For the respondent there was a brief by *Joseph A. Melli, James K. Ruhly* and *Melli, Shiels, Walker & Pease, S. C.,* of Madison, and oral argument by *Joseph A. Melli.*

HEFFERNAN, J. This is an appeal by the State Personnel Board from a judgment of the circuit court reversing an order of the State Personnel Board directing the reinstatement of Kent H. Mayes, who, for economic reasons, was laid off as an employee of the University of Wisconsin. Sec. 16.05 (1) (e), Stats., provides that the Personnel Board may review layoffs when it is alleged that the decision of the appointing authority "was not

based on just cause." The principal question on this appeal is what is meant by "just cause" in a layoff situation.

We conclude that the Personnel Board, in ordering the reinstatement of the employee Mayes, erroneously applied standards appropriate to cases involving misconduct discharges but which are inappropriate to layoffs occasioned by economic circumstances. The circuit judge, on review, correctly held that an appointing authority acts with "just cause" in a layoff situation when it demonstrates that it has followed the personnel statutes and administrative standards set forth in sec. PERS 22.03[1] of the Administrative Code and when the layoff is not the result of arbitrary or capricious action.

While we find that the circuit court correctly found that "just cause," or legal cause, for a layoff is shown when there is compliance with the layoff procedures, and we conclude that the court correctly held that Mayes was properly laid off from his position as a police officer at the University of Wisconsin, we also conclude that Mayes' subsequent layoff from the position of security officer was arbitrary and capricious. We are thus obliged to modify the circuit court's judgment of total reversal by directing that Mayes be reinstated in the lower civil service category of security officer and affirming the layoff from the position of police officer.

The administrative rules (ch. PERS 22) provided that a proper legal basis for the layoff of a permanent employee exists when it is necessary to reduce the work force because of a stoppage or lack of work funds or because of material changes in the duties or organization of the unit concerned. Probationary, provisional, and emergency employees must be laid off prior to the layoff of permanent employees. The appointing authority must, at a reasonable time in advance of the layoff, confer with

---

[1] Sec. 22.03 has since been amended.

the director of personnel to assure that the rules have been complied with.

In a situation such as this, the employees in the layoff group include the three least senior employees in the unit (PERS 22.03 (3)). It also requires that the persons in this layoff group be ranked according to their relative job performance (PERS 22.03 (4)), and the most efficient and effective employees be retained (PERS 22.03 (5)).

When an employee is laid off in one classification, the statutes give that employee "bumping rights"—"the exercise of a displacing right to a comparable or lower class." Sec. 16.28 (2) (b), Stats. 1971.

The Administrative Rule 22.03 (4) gives further recognition to the exercise of this right to employment in a comparable or lower classification. That section of the Administrative Code provided:

"22.03 (4) RANKING BY PERFORMANCE. All employes in the group thus to be considered for layoff shall be ranked by the appointing authority according to their relative performance in the given class and unit. Such ranking shall be based on recent and comparable standards of performance. When layoff is induced in another class as a result of any employe exercising his 'bumping' rights, all employes in the resulting layoff group shall be ranked according to their relative performance on a man-to-man comparison basis. Other factors such as specialized skills which will enable retaining the most efficient and effective employes may be considered in making the ranking when deemed appropriate."

In the instant case, Mayes was employed by the University as a police officer. When he was informed that he would be laid off from that position, he attempted to exercise his "bumping rights" to the position of security officer. However, when he was evaluated in respect to other members of the new group of security officers, he was again found to be not among the most efficient and effective employees within the layoff group and was laid off from that position also.

On appeal to the Personnel Board, the Board concluded that "just cause" for a layoff was to be measured by the legal requirements and standards that this court has approved in discharge cases. *Bell v. Personnel Board* (1951), 259 Wis. 602, 49 N. W. 2d 889; *Reinke v. Personnel Board* (1971), 53 Wis. 2d 123, 191 N. W. 2d 833; *Safransky v. Personnel Board* (1974), 62 Wis. 2d 464, 215 N. W. 2d 379. "Just cause" was held in these cases to mean proof that misconduct had actually occurred and not merely proof that the appointing authority believed that misconduct had occurred. Applying that standard, the Personnel Board found that there was not substantial evidence to show that the laid-off employee was the least efficient and effective employee in the layoff group.

The circuit court correctly pointed out that "just cause" means a cause sufficient at law or a lawful ground. In a case such as this there must be a proper legal basis for the layoff.

While, in the case of a discharge, to show just cause the Board must be convinced that the alleged act or alleged course of conduct actually occurred, the standard applied where layoff is necessary is different.

The circuit judge correctly stated that the only questions presented in a layoff review are whether the procedure outlined in sec. 16.28 (2), Stats., and Wis. Adm. Code ch. PERS 22 was followed and was the layoff of the employee otherwise authorized by applicable law. Under the standard, properly utilized by the trial court, it is apparent that the procedures outlined in the statutes and Administrative Code were followed. PERSONNEL 22.03 (4) provided that:

"All employes in the group thus to be considered for layoff shall be ranked by the *appointing authority* according to their relative performance in the given class and unit." (Emphasis supplied.)

Thus, the standard to be applied is, to a degree, subjective and involves the determination of what the em-

ployer or the appointing authority thought of the laid-off employee's work. It does not involve the beliefs of fellow employees in respect to the quality of the laid-off employee's work. The circuit judge appropriately stated:

"The evaluation of the relative performances of employees by nature requires the supervisor to make a 'judgment call.' A layoff system based on supervisors' evaluations of employees 'efficiency and effectiveness'— criteria which in themselves involve a great deal of subjectivity—necessarily places great reliance on the supervisors' 'beliefs and conclusions' about their subordinates' relative merits. Evidence of those beliefs and conclusions—such as standard personnel rating sheets— is relevant, probative and controlling on the issue of whether the most efficient and effective employees have been retained."

While the appointing authority indeed bears the burden of proof to show "just cause" for the layoff, it sustains its burden of proof when it shows that it has acted in accordance with the administrative and statutory guidelines and the exercise of that authority has not been arbitrary and capricious.

The Administrative Code PERS 22.03 (5) provided that the relative ranking of all the employees within the group "shall determine which employes are laid off." The Personnel Board ignored the relative rating scale on which Mayes' layoff as police officer was predicated. As the administrative regulations required, and as the circuit judge stated, that relative rating scale is determinative and is conclusive unless there is evidence that it was prepared in the exercise of caprice or arbitrariness.

The University, in the course of the hearing, produced uncontroverted evidence showing that the substantive and procedural requirements of sec. 16.28 (2), Stats., and Wisconsin Administrative Code PERS 22 had been met. Inasmuch as the University complied with all applicable rules and statutes, the appointing authority's decision to

lay off Mayes from the position of police officer was for "just cause," as that phrase is explained by the statutes and regulations in respect to layoffs.

The University's compliance with each of these procedural steps was established before the Personnel Board and was not contested. The only function of the Personnel Board in the determination of "just cause" in a layoff situation is to determine whether there has been compliance with the statutes and the rules.

In the instant case, the Personnel Board completely ignored the only relevant evidence before it—the evaluation scale which determined Mayes' relative rating. By concluding that the Board ignored that evidence, we must conclude that its finding was not supported by substantial evidence.

Its erroneous finding was, however, primarily the result of the application to layoff cases of the evidentiary standards required in discharge cases. Accordingly, the Board's decision was "affected by other error of law" (sec. 227.20 (1) (b), Stats.). The Board must be reversed in respect to its conclusion that there was not "just cause" for the layoff of Mayes from the position of police officer.

The circuit judge correctly stated that the layoff performance rating scale was to be conclusive in a layoff case unless "proved to be arbitrary, capricious, or in bad faith."

Although the Board did not address itself to the layoff of Mayes from the position he entered—that of security officer—when he exercised his "bumping rights," the record shows that there were two evaluations and two layoffs involved. The evaluation in the original layoff from the position of police officer was performed in the exercise of due administrative discretion. The second rating and layoff, however, glaringly demonstrates arbitrary and capricious conduct.

We have said that, for administrative action to avoid the label of "capricious or arbitrary," it must have a rational basis. In *Olson v. Rothwell* (1965), 28 Wis. 2d 233, 239, 137 N. W. 2d 86, this court said:

"Arbitrary or capricious action on the part of an administrative agency occurs when it can be said that said action is unreasonable or does not have a rational basis. . . . and [is] not the result of the 'winnowing and sifting' process."

While the original layoff evaluation showed that the supervisor, Brinkman, had sufficient contact with all three officers in the layoff group to demonstrate that the evaluation was the result of a reasoned thought process and was not arbitrary or capricious, quite the contrary is apparent from the record in respect to the second layoff.

When Mayes "bumped" to security officer, he was immediately placed in that layoff group without having performed the job. Despite the fact that he had never worked on the job and there was no opportunity to evaluate his performance, he was given the lowest rating among the security officers in that group. This evaluation was apparently made by Sgt. Krough and ratified by Brinkman.

Sgt. Krough, who made the actual subjective evaluation on this second layoff, stated his procedure during the course of the hearing before the Board:

"*Q.* Now, there's also been some discussion of how you go about evaluating a person for a job which he's never performed. I know you were directed to do this but how—what did you try to do?
(KROUGH)
"*A.* Well, I was—I don't know what I tried to do. I did it. Don't ask me how I did it. But I tried to set down as fair as I could and without even looking from one to the other, without putting their names and without

even scoring them. I didn't know how to do it. I still don't know how you can evaluate a man for a job he's never had.

"Q. But it's something that is required?

"A. It was required of me and like I said, I kept getting a picture of Officer Mayes as a Police Officer and the other two were Security Officers, and it was a big challenge.

"Q. Is it fair to say that you tried to picture Mr. Mayes in that capacity in comparison to the other people?

"A. Well, I don't even think I could do that. Like I say—

"Q. That is, did you attempt to do it?

"A. I was trying to be as fair as I could, and it was really a hard project to do due to the fact that Officer Mayes was never a Security Officer. I do know the men quite well and when you're trying to evaluate two different positions, you can think of one Officer good in his field but then you don't get the picture of a Police Officer in the same predicament. You know what I mean?

"It's just a hard situation to do, but I did try to do it as fair and honest as I could."

When Krough was asked, "If you didn't know how Mr. Mayes would do in some of these activities, how did you arrive at a numerical score," Krough replied, "Well, like I say, confusing it with the Police Officer really. I mean you shut your eyes and try to put somebody that you never seen done this and you're trying to justify it. It's hard to do." When Chairman Ahrens pointed out that, "Who better than you could rate the performance of a person who has worked under your supervision all the time even though you were rating him for another job. Both the jobs are under your direction," Krough replied, "True. But they're both—It's like night and day."

In sum, Krough admitted that the rating of Mayes was actually as a police officer and not as a security officer, and that, "I can't see anybody sitting down and rating a man that had never done the job. I just can't see it to this date. Sorry."

It is apparent from the face of this testimony that the rating of Mayes as a security officer was not the result of any rational process or a sifting or winnowing of the facts, but was entirely arbitrary and capricious.

Sgt. Krough cannot be faulted in the exercise of his discretion, for the mandate of the statute, which requires that the ranking shall be based on recent and comparable standards of performance, cannot be reasonably exercised when an employee is evaluated for a job he has never performed.

The Administrative Regulation PERS 22.03 (4) specifically states that, when layoff is necessitated as a result of an employee exercising his "bumping rights," "all employees in the resulting layoff group shall be ranked according to their relative performance on a man-to-man comparison basis." These regulations are deficient because apparently they do not contemplate that a laid-off employee from one group would be immediately relegated to the layoff group of the lower class by virtue of his lack of seniority, but that is what happened here.

Under these circumstances, it was probably impossible for the appointing authority to make a rational judgment of Mayes' performance in comparison to other employees in the layoff group of the lower category. Mayes, however, should not be penalized for this. Mayes was not laid off from the security officer group as the result of the exercise of any rational discretion. Sgt. Krough admitted as much. We, accordingly, have the situation in which the record shows that Mayes was properly laid off for "just cause," i.e., economic necessity and strict compliance with the layoff procedures, from his position as police officer, but was not laid off for "just cause" from the position of security officer.

Although we substantially agree with the reasoning of the trial court in respect to the issue it considered crucial in the initial layoff, we are obliged to reverse, because the circuit court failed to consider, in respect to

the second layoff, the standards which it held applicable to the original layoff.

Accordingly, it is directed that the Personnel Board issue an order affirming the University's decision to lay off Mayes from his position as police officer, and it is also directed to reverse the decision laying off Mayes as a security officer. Mayes is to be reinstated to his former position as security officer without loss of seniority or other benefits and with full back pay.

*By the Court.*—Judgment affirmed in part and reversed in part; cause remanded with directions that the record be returned to the Personnel Board for the entry of an order consistent with this opinion.

DAY, J., took no part.