RACINE EDUCATION ASSOCIATION, Petitioner-Appellant,

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION and
Racine Unified School District, Respondents-
Respondents.

Court of Appeals

*No. 97–0306. Submitted on briefs September 24,
1997.—Decided October 22, 1997.*

(Also reported in 571 N.W.2d 887.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Robert K. Weber* of *Weber & Cafferty, S.C.* of Racine.

On behalf of the respondent-respondent Wisconsin Employment Relations Commission, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *John D. Niemisto*, assistant attorney general.

On behalf of the respondent-respondent Racine Unified School District, the cause was submitted on the brief of *Jack D. Walker* and *Douglas E. Witte* of *Melli, Walker, Pease & Ruhly, S.C.* of Madison.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

SNYDER, P.J. The Racine Education Association (REA) appeals from a circuit court order which affirmed a decision of the Wisconsin Employment Relations Commission (WERC). WERC had affirmed an opinion issued by a hearing examiner in which the examiner concluded that the Racine Unified School District's (the District) trial implementation of a year-round school calendar was not an issue subject to mandatory bargaining. WERC agreed, concluding that the issue is a permissive subject of bargaining because it relates primarily to educational policy and not to wages, hours and conditions of employment. On review, the circuit court found that there was a rational basis for WERC's conclusion and affirmed. REA now appeals this decision, claiming that WERC erred in its determination that the implementation of a year-round school calendar was primarily related to educational policy rather than to employee hours and working con-

ditions. Because we conclude that WERC correctly balanced the competing interests, we affirm.

The District and REA have been parties to a series of collective bargaining agreements. At the time of the instant case, the parties were in a hiatus period after the expiration on August 24, 1992, of an agreement which had covered a two-year time period. In early 1991, while under the terms of this agreement, the District began to study the concept of year-round education.

The parties commenced negotiations over the terms of a successor bargaining agreement in the spring of 1992 and negotiations continued throughout 1992 and 1993. In February 1993, the District created a steering committee to examine the feasibility of implementing a year-round educational program beginning in 1994. In October 1993, the school board voted to approve the steering committee's ultimate recommendation to create two year-round schools with implementation of the plan on July 1, 1994.

REA filed a complaint with WERC alleging that the District had committed prohibited practices in violation of § 111.70(3)(a)1, 3 and 4, STATS.[1] After holding a series of hearings, a hearing examiner dismissed the complaint, concluding that: (1) the year-round educational program implemented by the District primarily related to educational policy rather than to wages, hours and conditions of employment; (2) because of this, the institution of a year-round program was not a mandatory subject for bargaining; and (3) the District

---

[1] The original complaint filed alleged that "the Employer has engaged in individual bargaining with teachers" and also "failed to bargain in good faith with the Association . . . concerning the wages, hours and conditions of employment at said sites in a Year-Round Education program."

had not violated its duty to bargain over the impact of the year-round educational program on employee wages, hours and conditions of employment. Upon review, the hearing examiner's findings of fact, conclusions of law and decision were affirmed by WERC.[2]

REA petitioned the circuit court for review of WERC's decision. *See* § 227.53, STATS. The circuit court affirmed the decision of WERC in all respects and dismissed REA's petition. REA now appeals.

## STANDARD OF REVIEW

On appeal, we review WERC's decision, not the decision of the circuit court. *See Jefferson County v. WERC,* 187 Wis. 2d 647, 651, 523 N.W.2d 172, 174 (Ct. App. 1994). There are three levels of deference afforded conclusions of law and statutory interpretation in agency decisions. *See Sauk County v. WERC,* 165 Wis. 2d 406, 413, 477 N.W.2d 267, 270 (1991). "Great weight" is the first and highest amount of deference given to agency interpretations. *See id.* Under this standard, a reviewing court will defer to an agency interpretation unless "[it] is an irrational one." *Id.* This standard is the one generally applied in review of agency determinations and has been described as follows:

> [I]f the administrative agency's experience, technical competence, and specialized knowledge aid the agency in its interpretation and application of the statute, the agency's conclusions are entitled to deference by the court. Where a legal question is intertwined with factual determinations or with value or policy determinations or where the

---

[2] WERC's decision also modified one of the examiner's findings of fact and two conclusions of law.

agency's interpretation and application of the law is of long standing, a court should defer to the agency which has primary responsibility for determination of fact and policy.

*Id.* (quoting *West Bend Educ. Ass'n v. WERC*, 121 Wis. 2d 1, 12, 357 N.W.2d 534, 539–40 (1984)).

A second level of review is a midlevel standard, the "due weight" or "great bearing" standard. *See id.* This is used if the agency's decision is "very nearly" one of first impression. *See id.* at 413–14, 477 N.W.2d at 270. Finally, for questions that are "clearly one of first impression" in which the agency has "no special expertise or experience" a de novo standard of review is applied. *See id.* at 414, 477 N.W.2d at 271. This is the least deferential standard. *See id.*

We initially consider the question of whether this court's review of WERC's decision should be the highly deferential standard urged by the District or whether either of the lower standards is applicable because, as WERC acknowledged, it "has not previously had occasion to consider duty to bargain issues surrounding a shift from a traditional school calendar to a year-round calendar."

Although WERC has not previously considered a duty to bargain within this particular context, determinations of questions of mandatory versus permissive bargaining are frequently considered by WERC. *See West Bend Educ. Ass'n v. WERC,* 121 Wis. 2d 1, 13, 357 N.W.2d 534, 540 (1984). In each instance, WERC's determination hinges on the specific facts of the case. *See Beloit Educ. Ass'n v. WERC,* 73 Wis. 2d 43, 55, 242 N.W.2d 231, 236 (1976). As the supreme court noted in *School District of Drummond v. WERC,* 121 Wis. 2d 126, 133, 358 N.W.2d 285, 289 (1984):

The district alleges the commission has no experience on the subject of anti-nepotism rules and their effect on labor relations. *Though this may be true, that allegation ignores the experience of the commission in determining subjects of mandatory or permissible bargaining which is the issue in this action.* In any case where the commission is asked to determine whether a subject matter is mandatorily or permissibly bargainable, this court will apply the great weight—any rational basis standard to its "primary relation" conclusion. [Emphasis added.]

Whether implementation of a year-round educational program is a subject for mandatory or permissive bargaining is a question of law that intertwines facts, values and policy. *See West Bend,* 121 Wis. 2d at 13, 357 N.W.2d at 540. Our case law recognizes that "WERC . . . has special competence in the area of collective bargaining and has developed significant experience in deciding cases involving the issue of mandatory bargaining." *Id.* (footnotes omitted). These factors argue in favor of giving "great weight" to WERC's rulings on the bargaining nature of the year-round educational proposals. *See id.*

We conclude that the highly deferential "great weight" standard is applicable to this case. The issue presented is whether a particular proposal, year-round schooling, is a matter for mandatory or permissive bargaining. WERC has extensive experience in determining whether an issue is subject to mandatory or permissive bargaining. We note, however, that even without this beneficial standard of review, the balancing analysis performed by WERC passes muster. Therefore, while our analysis proceeds as highly deferential to WERC, we could, and would, affirm even if we

were to conclude that either the "due weight" or de novo standard of review was appropriate.

## WERC'S DECISION

Section 111.70(1)(a), STATS., sets forth the legislative line of demarcation between mandatory and permissive subjects of bargaining. It requires municipal employers, including school districts, to bargain "with respect to wages, hours and conditions of employment." *Id.*; *see also West Bend,* 121 Wis. 2d at 7, 357 N.W.2d at 537. Conversely, it also provides that a municipal employer "shall not be required to bargain on subjects reserved to management and direction." Section 111.70(1)(a). This statutory guideline recognizes that certain issues should not be mandatory subjects of collective bargaining. *See West Bend,* 121 Wis. 2d at 8, 357 N.W.2d at 538. It has also been recognized that some issues will touch simultaneously upon wages, hours and conditions of employment and upon managerial decision making and policy. *See id.*

Recognizing this tension and potential conflict, the supreme court has construed this statutory section as including a "primarily related" standard. *See id.* This standard requires WERC to determine whether the proposal is primarily related to wages, hours and conditions of employment, or to management and direction of the District. *See id.* The "primarily related" test balances the competing interests of the municipal employees, the District and the public in determining whether a proposed issue for bargaining should be characterized as mandatory. *See id.* at 9, 357 N.W.2d at 538. If the employees' legitimate interests in wages, hours and conditions of employment outweigh the employer's concerns about the restriction on managerial prerogatives and educational policy decision

making, the issue is a mandatory subject for bargaining. If the management and direction of the school district predominates, then bargaining is not mandatory. *See id.* However, stating the balancing test is often easier than isolating the competing interests in a specific situation and evaluating them. *See id.*

WERC considered the proposed implementation of a year-round school pilot program and concluded that the program "was based upon educational policy judgments by the District that learning opportunities would improve. Thus, the year-round school program had a direct and substantial relationship to educational policy." (Footnote omitted.) WERC cited the examiner's conclusion that the decision to establish a year-round program was based primarily on two factors: (1) a policy choice that student achievement could be improved if the two and one-half month gap in the traditional calendar was replaced with shorter breaks during which remediation or enrichment could occur; and (2) the potential financial savings which could result from the year-round use of school buildings.

WERC also reviewed the examiner's finding that "the change to a year-round school calendar had a direct and substantial impact on the timing of employe vacations and thus on employe hours and conditions of employment." WERC noted that the examiner's decision recognized that the impact on employee wages, hours and conditions of employment was "concededly substantial." Yet the examiner concluded that the implementation of the year-round school program was primarily related to educational policy and that this predominated. Therefore, the failure to engage in bargaining prior to the institution of the pilot program did

not constitute a violation of the District's duty to bargain.[3]

WERC's decision agreed with the balancing conclusions of the examiner. Thus, according to WERC, "[T]he District alteration of the timing of the pre-existing work/vacation schedule for teachers who would staff the newly created year-round schools did not alter the *status quo* as to a mandatory subject of bargaining." WERC also noted that it agreed with the examiner "in the context of this record."

In response, REA argues that "[t]his appeal concerns . . . the distribution of workdays and vacation days throughout the course of a calendar year [and] is so intrinsically related to employee hours and working conditions that this aspect of a school calendar should be determined to be a mandatory subject of bargaining." It then contends that any positive effects a year-round education program may have on education is "purely speculative" and that "it is clear that teachers in a year-round track lose the ability to pursue outside activities during the traditional June through August block of summer recess."

First, we note that the wisdom of the District's policy decision to implement year-round schools is irrelevant to the mandatory/permissive duty to bargain analysis. As long as the expressed policy reasons represent the true basis for the decision, the question of whether the policy will actually provide the hoped-for results does not factor into the equation. Likewise, we do not deny REA's contention that year-round school will significantly impact individual teachers' ability to "pursue outside activities during the traditional June

---

[3] WERC's decision recognized that the District is obligated to continue bargaining on the impact of the year-round program on employee wages, hours and conditions of employment.

through August block of summer recess." Both the examiner and WERC considered and weighed this aspect, but ultimately concluded that the District's educational policy judgments predominated.

REA also contends that this decision "contravenes a long line of rulings interpreting calendar issues." REA posits that "under the approach now taken by the Commission . . . [r]adical changes in teacher hours and vacation schedules would be permitted in the absence of a negotiated agreement, while relatively minor calendar changes (e.g., the day of the school year calendar on which an annual inservice program takes place) would be precluded." We are not persuaded that WERC's decision will have such an impact.

The "primarily related" test does not lend itself to "broad and sweeping rules that are to apply across the board to all situations." *Beloit Educ.,* 73 Wis. 2d at 55, 242 N.W.2d at 236. Instead, it is intended to be applied as a "case-by-case approach to specific situations." *Id.* In this case, WERC weighed the evidence and testimony presented by both sides and concluded that the implementation of a year-round program was primarily related to educational policy. A different set of facts could result in a different decision. In this case, we conclude that there is a rational basis for the conclusion of WERC, and consequently affirm.

*By the Court.*—Order affirmed.