MADISON TEACHERS, INC., Petitioner-Appellant,

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION,
Respondent-Respondent.

Court of Appeals

*No. 97–2116. Submitted on briefs February 11,
1998.—Decided March 26, 1998.*

(Also reported in 580 N.W.2d 375.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Lester A. Pines* and *Stacy M. Rios* of *Cullen, Weston, Pines & Bach* of Madison.

On behalf of the respondent-respondent, the cause was submitted on the brief of *John D. Niemisto*, assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

Before Eich, C.J., Roggensack and Deininger, JJ.

DEININGER, J.   The Wisconsin Employment Relations Commission (WERC) decided that the Madison Metropolitan School District had no duty to bargain with teachers over a policy requiring certain teachers to telephone the parents of students during the first two weeks of the school year. The circuit court affirmed the WERC decision, and the teachers' labor organization, Madison Teachers, Inc. (MTI), appeals the circuit court order. MTI claims the WERC erred when it determined that the policy in question had "no impact" on the teachers' wages, hours or conditions of employment. We disagree and affirm the circuit court order upholding the WERC determination.

## BACKGROUND

Under § 111.70(3)(a)4, STATS., it is a prohibited practice for a municipal employer to "refuse to bargain collectively with a representative" of its employees with respect to a subject for which the employer is under a duty to bargain. Section 111.70(1)(a), defines "collective bargaining," and describes subjects which must be bargained as follows:

> [W]ages, hours and conditions of employment . . . .
> The municipal employer shall not be required to bargain on subjects reserved to management and direction of the governmental unit *except insofar as the manner of exercise of such functions affects the wages, hours and conditions of employment of the municipal employes* in a collective bargaining unit.

(Emphasis added.) If a dispute arises regarding whether a particular issue is subject to mandatory bargaining, either party may request a determination from the WERC. Section 111.70(4)(b).

In determining whether a proposal is subject to mandatory bargaining, the WERC employs a "primarily related" standard. *West Bend Educ. Ass'n v. WERC*, 121 Wis. 2d 1, 8, 357 N.W.2d 534, 538 (1984). That is, the initial inquiry must focus on "whether the proposals are 'primarily related' to 'wages, hours and conditions of employment,' [or] to 'educational policy and school management and operation.' " *Id.* (quoted source omitted). "If the proposal is primarily related to wages, hours and working conditions, it is a mandatory subject of bargaining, while if it is primarily related to educational policy and school management, it is a permissible subject concerning which the district has no

duty to bargain." *School Dist. of Drummond v. WERC,* 121 Wis. 2d 126, 136, 358 N.W.2d 285, 290 (1984).

■

Even where a proposal is primarily related to policy and management concerns, and is thus not mandatorily bargainable, the employer must bargain "[t]he impact[1] of an educational policy affecting wages, hours, and working conditions." *Blackhawk Teachers' Fed'n v. WERC,* 109 Wis. 2d 415, 424, 326 N.W.2d 247, 252 (Ct. App. 1982); *see also Racine Educ. Ass'n v. WERC,* 214 Wis. 2d 352, 360 n.3, 571 N.W.2d 887, 891 (Ct. App. 1997). If bargaining the policy itself is mandatory, "the parties confer about whether the pro-

---

[1] The words "impact" and "effect" are not found in § 111.70 (1)(a), STATS. Rather, the statute imposes on a municipal employer the duty to bargain with respect to policies primarily relating to "management and direction of the governmental unit . . . *insofar as the manner of exercise of such functions affects* the wages, hours and conditions of employment of . . . municipal employes" (emphasis added). This court and the supreme court, however, routinely refer to this requirement as bargaining the "impact" or "effect" of a proposal, as do the parties to this appeal. *See, e.g., West Bend Educ. Ass'n v. WERC,* 121 Wis. 2d 1, 10, 357 N.W.2d 534, 538 (1984) ("the effects of the layoff were mandatory subjects of bargaining"); *School Dist. of Drummond v. WERC,* 121 Wis. 2d 126, 140, 358 N.W.2d 285, 292 (1984) ("the effect or impact of that proposal on the employees' wages, hour and conditions of employment are subjects for bargaining"); *Beloit Educ. Ass'n v. WERC,* 73 Wis. 2d 43, 54, 242 N.W.2d 231, 236 (1976) (the statute requires mandatory bargaining as to "the impact of the 'establishment of educational policy' affecting 'wages, hours and conditions of employment' "); *Racine Educ. Ass'n v. WERC,* 214 Wis. 2d 352, 360 n.3, 571 N.W.2d 887, 891 (Ct. App. 1997) ("District is obligated to continue bargaining on the impact of the year-round program on employee wages, hours and conditions of employment").

posal should be adopted and what it should say"; but when bargaining over the impacts of a policy, the parties "discuss the manner of applying the policy adopted or exercising the function involved." *School Dist. of Drummond,* 121 Wis. 2d at 140, 358 N.W.2d at 292.

The WERC made the following factual findings regarding the history of the present dispute between MTI and the District:

> 3. In the 1992–93 school year, Memorial High School established a pilot program for freshmen called the Core Program with a goal of increasing the percentage of ninth grade students who after the first year would have enough credits to be promoted. The pilot program involved only two Cores. Each Core consisted of about 80 students and had an English, Social Studies and Science teacher in common. In 1992–93, each Core teacher was given an extra period each day for planning and discussing strategies to meet the needs of students. In 1993–94, the Core program was implemented for the entire ninth grade and consisted of five Cores with about 80 students each and each Core teacher was given 2 1/2 periods per week for planning and discussing strategies for meeting students' needs. In addition to meeting with each other, the Core teachers met with the guidance counselor as well as the social worker, school psychologist, principal, reading specialists and parents of the students.
>
> 4. In August, 1994, it was suggested by the Memorial High School administrators that over the first month of school each Core be divided up and each Core teacher contact the parents or guardians of their share of Core students. In September, 1994, the assistant principals at Memorial sent a memo to all Core teachers stating that now was an excellent time to make phone calls to parents/guardians. The MTI building representative, by a memo dated

October 5, 1994, informed Core teachers that the phone calls would take considerable time and effort and was an additional burden and the District could not unilaterally impose it. This dispute was not resolved and the Core teachers were not required to make the calls.

5. On September 6, 1995, Memorial High School Principal Carolyn Taylor sent a memo to all Core teachers which stated, in part, as follows:

> Using some of the time provided by our Core arrangements (or any other time you deem appropriate to substitute), please make telephone contact with one parent of each student in your Core.

The memo provided that the Core students be divided into fourths and it was anticipated that each teacher would have fewer than 20 contacts with each contact taking about five minutes and the memo stated that the contacts should be completed by September 20, 1995.

On October 25, 1995, MTI filed a prohibited practice complaint with the WERC alleging that the District had failed to "bargain with MTI over the subject of the requirement that Memorial Core teachers perform additional work by making telephone contacts with 'Core parents,'" and had failed to "bargain with MTI over the impact of the directive that Memorial Core teachers make telephone contact with Core parents." At the hearing before a WERC hearing examiner, however, MTI stipulated that "the [D]istrict does indeed have the right to implement this responsibility to make the phone calls and that the issue before the hearing examiner is the duty to bargain the impact, if any, of that responsibility." After considering the testimony at the hearing and the briefs of the parties, the

examiner ordered MTI's complaint dismissed, concluding:

> The District's Memorial High School Principal's directive dated September 6, 1995, to make telephone contact with Core parents had no impact on wages, hours or conditions of employment so the District had no duty to bargain over said directive
> . . . .

MTI sought review of the WERC's decision and order in the circuit court and now appeals the circuit court's order affirming the WERC determination.

## ANALYSIS

■ We independently review the WERC's determination, not the decision of the circuit court. *Racine Educ. Ass'n*, 214 Wis. 2d at 355, 571 N.W.2d at 889. The scope of our review depends, initially, on whether the agency determination under review is its finding of a fact or its interpretation of law. *See* § 227.57(3), (5) and (6), STATS. MTI asserts that the WERC's determination, that the proposed District policy had "no impact" on wages, hour or conditions of employment, is a conclusion of law which we should review de novo, or to which we should accord, at most, "due weight" deference. The WERC, on the other hand, devotes most of its brief to developing its argument that the "no impact" determination was factual in nature and was based on "substantial evidence in the record." The WERC also requests in one paragraph, however, that we grant "great weight deference" to the WERC's "interpretation and application of the statute" in deciding "whether the establishment of [the District policy] had an impact on teachers' wages, hours and conditions of employment."

Whether the WERC's "no impact" determination is a factual finding or a statutory interpretation, and if the latter, what level of deference should be accorded by a reviewing court, are apparently questions of first impression. In most of the reported cases, the principal matter in dispute is whether a proposed school district policy is "primarily related" to educational policy or to wages, hours and conditions of employment. The second statutory requirement, that a policy's impact on the three listed employee interests must be bargained, is often conceded or not seriously in dispute. *See, e.g., Beloit Educ. Ass'n v. WERC,* 73 Wis. 2d 43, 242 N.W.2d 231 (1976); *West Bend Educ. Ass'n,* 121 Wis. 2d at 14–15 n.17, 357 N.W.2d at 541; *School Dist. Of Drummond,* 121 Wis. 2d at 139 n.7, 358 N.W.2d at 292; *Blackhawk Teachers' Fed'n Ass'n,* 109 Wis. 2d at 429–30, 326 N.W.2d at 255; *Racine Educ. Ass'n,* 214 Wis. 2d at 360 n.3, 571 N.W.2d at 891.

The WERC's "no impact" determination is included within a segment of its decision entitled "CONCLUSION OF LAW," although it appears that the actual legal conclusions being made are these: (1) that the District had no duty to bargain over the Core parent telephone policy, and (2) that the District did not commit a prohibited practice. We are not bound by an agency's characterization of whether it is finding a fact or making a conclusion of law. *Connecticut Gen. Life Ins. Co. v. DILHR,* 86 Wis. 2d 393, 405, 273 N.W.2d 206, 211 (1979) ("[A] mislabeled finding will be treated by the reviewing court as what it is rather than as what it is called.").

Many agency determinations require the application of statutory or common law standards, such as

"adequate," "reasonable" or "substantial," to found facts, and those determinations are generally treated as questions of law. Application of the "primarily related" test, for example, involves a question of law that is "intertwined with facts, values and policy," *West Bend Educ. Ass'n,* 121 Wis. 2d at 13, 357 N.W.2d at 540, and it requires the WERC to weigh the competing interests of municipal employers and employees. *Id.* at 9, 357 N.W.2d at 538. The determination of whether a certain policy has any impact or effect on wages, hours or conditions of employment, however, does not require weighing or balancing. The policy in question either has an effect or impact on recognized employee interests, or it does not. In answering the question, "Does this policy have an impact on wages, hours or conditions of employment?" the WERC need not look to a statutory or common law standard, but only to the evidence presented on the issue.

We thus conclude that the WERC's determination that the District's Core parent telephoning policy had no impact on teachers' wages, hours or conditions of employment is a finding of fact, to which we must defer if it is supported by substantial evidence in the record. Section 227.57(6), STATS. We may not substitute our judgment for that of the WERC "as to the weight of the evidence on any disputed finding of fact." *Id.* The test is not whether a preponderance of the evidence supports the WERC's determination, but whether reasonable minds could arrive at the same conclusion reached by the WERC. *State ex rel. Palleon v. Musolf,* 120 Wis. 2d 545, 549, 356 N.W.2d 487, 489 (1984). Moreover, when reviewing the record, we look for evidence which supports the determination the WERC made, not for evidence which might support a contrary finding that

the agency could have made, but did not. *See Hamilton v. DILHR*, 94 Wis. 2d 611, 617, 288 N.W.2d 857, 860 (1980). We will set aside the WERC's "no impact" determination only if our review of the record convinces us that "a reasonable person, acting reasonably, could not have reached the decision from the evidence and its inferences." *Id.* at 618, 288 N.W.2d at 860.[2]

Before reviewing the evidence in the record which supports the WERC's finding of no impact, we note that MTI has the burden, as the complainant, of establishing that the Core parent telephoning policy affected teachers' wages, hours and conditions of employment. *See La Crosse County Inst. Employees v. WERC*, 52 Wis. 2d 295, 302, 190 N.W.2d 204, 208 (1971) (union alleging prohibited labor practice has the burden of

---

[2] Since the substantial evidence standard by which we review an agency's factual finding is ultimately grounded on the reasonableness of the finding in view of the evidence presented to the agency, the result of this appeal would not likely be different had we concluded that the WERC's "no impact" determination was a conclusion of law. "In any case where the [WERC] is asked to determine whether a subject matter is mandatorily or permissibly bargainable, this court will apply the great weight—any rational basis standard to its 'primary relation' conclusion." *School Dist. of Drummond v. WERC*, 121 Wis. 2d 126, 133, 358 N.W.2d 285, 289 (1984); *see also Racine Educ. Ass'n v. WERC*, 214 Wis. 2d 352, 357, 571 N.W.2d 887, 890 (Ct. App. 1997). We fail to see why we would accord any less deference to the WERC's legal conclusion concerning a second aspect of the same statutory provision. Application of the "great weight" deference standard of review in this case would require us to uphold the WERC's determination if its "view of the law is reasonable even though an alternative view is also reasonable." *West Bend Educ. Ass'n v. WERC*, 121 Wis. 2d 1, 13–14, 357 N.W.2d 534, 540 (1984).

proof). The WERC hearing examiner noted that the parties had "conceded that making telephone calls to parents is fairly within the scope of a teacher's regular job duties," and further that "wages did not change nor were they argued to be affected and no change in hours were argued to have occurred." MTI does not challenge these statements. Thus, the factual dispute before the WERC centered on whether the policy caused "a change in working conditions in that additional work was assigned."

Since it bears the burden of proof, we look to MTI to articulate the impact of the Core parent telephoning policy on the working conditions of its members that it claims to have established in the record. In its opening brief, MTI claims that Core teachers' working conditions were "adversely impacted" because "the calls were now mandatory and had to be made during the first two weeks of school, thereby replacing other program duties." MTI argues both that the telephone calls would take more time than was available in the allotted five "Core planning periods" during the first two weeks of school, and that requiring the telephone calling in place of other Core responsibilities (such as planning and discussions with other teachers) during this period affected "the stress level and quality of the work environment."

First, with respect to the number of hours required for a Core teacher to comply with the parent telephoning policy, District witnesses testified that each teacher would be required to contact approximately twenty parents, and that the calls would take an average of five minutes each, for a total of approximately one and one-half hours per teacher. An MTI witness, however, testified, based on his experience in making other calls to parents, that a particular call might take

"anywhere from one or two minutes to 15 or 20." Another MTI witness testified that he had made the requested parent phone calls during the 1993–94 school year, that it often required two or three calls to make contact, and that an average of fifteen minutes was spent per student, "including the calls and the repeated calls."

As we have noted above, evaluating the weight and credibility of evidence is within the WERC's province, and not within ours as a reviewing court. Even if the WERC accepted the testimony of MTI witnesses, however, the telephone calls would require at most five to six hours of a Core teachers' time. We conclude that "reasonable minds" could find on this record that the parent telephoning policy could be accomplished within the five hours allotted to Core teachers for their Core program responsibilities during the first two weeks of school.

Second, the record contains little, if any, evidence tending to show that the re-prioritizing of duties within the Core teachers' planning time, in and of itself, would adversely affect the teachers' conditions of employment. Neither party cites authority providing a precise or comprehensive definition of "conditions of employment."[3] The WERC, citing *Beloit Educ. Ass'n,* 73 Wis.

---

[3] "Conditions of employment," in various contexts, has been stated to include: "job status, responsibility, and authority," *Kelley Co. v. Marquardt,* 172 Wis. 2d 234, 251, 493 N.W.2d 68, 76 (1992); "conditions of hiring of new employees and termination of present employees," *School Dist. of Drummond v. WERC,* 121 Wis. 2d 126, 137, 358 N.W.2d 285, 291 (1984); "[e]mployer-imposed discipline [which] threatens job security" and "an atmosphere of fear that [a teacher] may be disciplined or censored by an employer [for exercising constitutionally guaranteed rights]," *Blackhawk Teachers' Fed'n v. WERC,* 109

2d at 64 n.37, 242 N.W.2d at 241, asserts in its brief that the term includes "matters such as the quality and safety of the work environment, the work load for the time allotted, the stressfulness of assignments, and the potential for disciplinary problems with students." MTI accepts this definition and contends in its reply brief that "[i]t is uncontroverted that the teachers felt additional stress from the imposition of the duty to call parents during the first two weeks of school." However, MTI provides no citation to the record in support of this assertion. *See Keplin v. Hardware Mut. Cas. Co.,* 24 Wis. 2d 319, 324, 129 N.W.2d 321, 323 (1964) (reviewing court need not sift record for facts which support a party's contention).

MTI witnesses did testify that making the phone calls instead of having discussions with other Core teachers early in the school year would make it more difficult to know how to deal with the students in the classroom. The following is representative of that testimony:

> It is not only essential, it is the whole reason for [C]ore that the three of us are going to be able to meet together in a common time; so we can exchange information; so that we can challenge

Wis. 2d 415, 442, 326 N.W.2d 247, 261 (Ct. App. 1982); "new rules regarding the scheduling of special duty overtime work, vacation days and off days," *Milwaukee Prof'l Firefighters Local 215 v. City of Milwaukee,* 78 Wis. 2d 1, 3, 253 N.W.2d 481, 483 (1977); "conditions . . . which materially affect rates of pay, wages, hours of employment and working conditions;" and class size, because "[t]he larger the class, the greater the teacher's work load, e.g., more preparation, more papers to correct, more work projects to supervise, the probability of more disciplinary problems, etc.," *Beloit Educ. Ass'n v. WERC,* 73 Wis. 2d 43, 53 n.11, 64 n.37, 242 N.W.2d 231, 236, 241 (1976).

somebody's assumptions if we are seeing something different; so that the three of us can be convinced of a course of action; so that perceptions can be validated or corrected and that some kind of action results from that in a coordinated effort to insure success.

The whole point of [C]ore was to get students off on the right foot in high school. Those initial meetings in August and September and October that first quarter are critical to getting them off on the right foot at the start of ninth grade.

An MTI witness also testified, however, that making telephone contacts with the parents of students is expected of teachers in general, and that "having positive contacts with parents. . . . [is] useful and a good thing."

We conclude that "reasonable minds" could conclude from the evidence in the record that the dispute between MTI's members and the District was over priorities within a Core teacher's work assignment, and that the parent telephone policy was not one that adversely affected teachers' conditions of employment. The WERC thus reasonably found the following from the evidence in the record:

Which is more important, first calling Core parents or Core planning at the start of the school year in the 2 1/2 hours each week set aside for this is a judgment call and although there is a difference of opinion, the Principal has the right to determine which is more important as educational policy concerns control. The Core teachers were not asked to do the phone calls in addition to their Core assignment but in lieu thereof as part of the Core assignment. Thus, there was no new duty but simply which responsibility should be done when and

90

this has no impact on wages, hour or conditions of employment.

Finally, we briefly address MTI's argument that the WERC wrongly considered whether the Core parent telephoning policy had "an impact" on teachers' conditions of employment, instead of whether it had a "potential impact." MTI claims that since the policy is new, "it is impossible for any of the parties to know how much impact these calls would have on teachers' schedules and conditions of employment." According to MTI, we must thus conclude that the record would support a finding of "potential impact," and, at a minimum, we must remand the matter to the WERC for a factual determination on "potential impact."

This argument is based on a strained reading of *School Dist. of Drummond v. WERC,* 121 Wis. 2d at 139 n.7, 358 N.W.2d at 292, where the supreme court stated its agreement with the following language from a WERC decision:

> [T]he District's duty to bargain over both the policy and the impact thereof exists regardless of any present impact upon any current bargaining unit employe. It is the potential for that impact upon unit employes which triggers the duty to bargain.

The point being made in *School Dist. of Drummond,* however, was simply that even if there were no present employees directly affected by a newly imposed anti-nepotism policy, since the policy clearly impacted on the conditions of employment of any present or future employee who was covered by the policy's prohibitions, the impact of the policy had to be bargained. That is not the same thing as requiring impact bargaining when the existence of any impacts from a policy on any present or future employee is purely a matter of

91

conjecture. As we have noted, MTI carries the burden of proving that the parent telephoning policy has an impact on teachers' conditions of employment. It does not meet that burden by arguing, after the hearing, that even if it did not establish a bargainable impact of the policy, it raised enough doubts about "potential impact" that it should nonetheless prevail.

For the reasons discussed above, we conclude there is substantial evidence in the record from which the WERC could find that the Core parent telephoning policy had no impact on Core teachers' wages, hours or conditions of employment. The WERC did not err in dismissing MTI's prohibited practice complaint.

*By the Court.*—Order affirmed.