PER CURIAM.
¶ 1 Rachel Koester and Justyn Witscheber appeal a circuit court order reviewing decisions of the Wisconsin Employment Relations Commission. We affirm.
¶ 2 The appellants were, respectively, a correctional officer and sergeant at Oakhill Correctional Institution. They each appealed their discharge to the commission, which affirmed the discharges. The circuit court affirmed the commission on judicial review. Although these were separate proceedings before the commission, the circuit court issued one order addressing both cases, and both circuit court cases were docketed under one appeal number.
¶ 3 There were several work rules that the commission found were violated. One was work rule no. 6, which prohibited knowingly giving false information. Another was work rule no. 12, which prohibited demeaning or intimidating another employee. Another was work rule no. 13, which prohibited harassment of others. Finally, work rule no. 2 required compliance with written policies and procedures.
¶ 4 The appellants argue that their discharges were not supported by substantial evidence. The applicable standard is not whether the decision is supported by a preponderance of the evidence, but is instead whether reasonable minds could reach the decision made by the agency. Madison Teachers, Inc. v.WERC , 218 Wis. 2d 75, 85, 580 N.W.2d 375 (Ct. App. 1998). We do not substitute our judgment for that of the agency as to the weight of the evidence, and we look for evidence that supports the decision, not for contrary evidence. Id. at 85-86. We review the decision of the agency, not the circuit court. Barakat v. DHSS , 191 Wis. 2d 769, 777, 530 N.W.2d 392 (Ct. App. 1995).
I. Substantial evidence as to Koester.
¶ 5 We address the evidence separately as to each appellant. As to Koester, the commission found that Koester "intimidated, harassed, interfered with, and demeaned OCI Officer Z (not his real initial) and other coworkers," and that she knowingly gave false information during the investigation. Those findings were based on the commission's finding that the department proved certain types of misconduct that the commission's opinion set forth in five groups. The commission also found several instances of giving false information in relation to that misconduct.
¶ 6 In its brief on appeal, the commission argues that the findings we described above were supported by evidence in the record that relates to misconduct in addition to the five specific groups discussed in the commission's order. However, we decline to consider the other misconduct. The commission itself disclaimed reliance on other conduct. The commission now appears, in essence, to be asking us to make additional findings that the commission itself did not make. We focus instead on Koester's arguments about the specific groups of conduct that were found by the commission, and whether they are supported by substantial evidence.
¶ 7 In the first group, the commission found that Koester made comments about Officer Z's sexual orientation in relation to the performance of his work duties. There were several episodes in this group.
¶ 8 The commission found that Koester knowingly gave false information about whether another corrections officer made a comment about "back door." Koester argues that this charge was not in her discharge letter. However, she does not develop an argument or cite any law explaining why that fact leads to relief for her. Koester makes the same discharge letter argument about other findings, as well, and we reject those arguments for the same reason without further describing them in this opinion.
¶ 9 The commission found that Koester made what a witness described as "gay jokes" in the lobby that Z heard. Koester argues that this finding must be rejected because it is based on uncorroborated hearsay. Uncorroborated hearsay, by itself, does not constitute substantial evidence. Gehin v. Wisconsin Grp. Ins. Bd. , 2005 WI 16, ¶ 81, 278 Wis. 2d 111, 692 N.W.2d 572. The finding was based on testimony by a person who testified that Z told him about Koester's lobby jokes. The commission found that this testimony was corroborated by an e-mail exchange in which another officer, writing to Koester, referred to Z as "Gay Boy."
¶ 10 Koester argues that the commission erred by concluding that, because she did not rebuke the e-mail author for her description of Z, there is a basis to conclude that Koester made "gay jokes" in the lobby. We agree with Koester that the e-mail message does not corroborate the testimony about "gay jokes" in the lobby. The fact that Koester participated in the exchange about Z, mainly as a recipient, does not corroborate any specific information related to the lobby jokes. Therefore, we conclude that the finding that Koester made jokes in the lobby is not supported by substantial evidence.
¶ 11 The commission found that Koester demeaned Z sexually and harassed him by her participation in the above e-mail exchange. Koester argues this was not harassment because Z was unaware of it. However, she does not develop the argument by, for example, relating her argument to the text of the applicable rule. Koester has not shown that this finding is unsupported.
¶ 12 In the commission's third finding, it found that Koester made disparaging comments about staffers who had transferred in from a juvenile facility. Koester argues that referring to these transferred staffers as "fake timers" was just "routine grousing about the privileges of seniority" that does not impair operations. We disagree. Reasonable minds could conclude that disparaging fellow employees in a correctional setting is corrosive to morale and impairs the group cohesion that may be necessary to perform required tasks.
¶ 13 In the commission's fourth finding, it found that Koester "badmouthed" Z to other staff and in front of inmates by referring to him as a "snitch" and saying that he should not be trusted. Koester argues that this conduct should not be considered a violation of the applicable rules but, again, she fails to discuss the content of the rules. In addition, her argument that "snitch" is not a negative term, because it is widely used in the prison context, is absurd.
¶ 14 In the commission's fifth finding, it found that Koester stared at Z in the cafeteria causing him to feel uncomfortable and intimidated and causing him not to eat there. Koester asserts that this finding is based solely on hearsay. However, she does not dispute the commission's finding that the hearsay was corroborated by the fact that the testifying officer saved a food tray for Z, and therefore can constitute substantial evidence. Koester also argues the commission's adoption of this testimony ignores other testimony favorable to her. However, as we stated above, our judicial review does not search for contrary evidence.
¶ 15 The commission also found that Koester provided false information during the investigation in three different ways. All of them were instances where Koester denied either hearing or making certain comments. Koester appears to argue that there is not substantial evidence for these findings because her denial of making or hearing certain statements made by others does not necessarily mean she intentionally lied, but may just be a different memory of the event. We reject this argument, which is basically just another variation on asking us to look for contrary evidence. The existence of that alternate potential explanation does not mean the commission's finding lacks substantial evidence.
II. Just cause for discharge as to Koester.
¶ 16 We review whether there was substantial evidence to show that the proven conduct is just cause for discharge. Safransky v. State Pers. Bd. , 62 Wis. 2d 464, 472, 215 N.W.2d 379 (1974). There is just cause when the conduct can reasonably be said to tend to impair the performance of the employee's duties or the efficiency of the group the employee works with. Id. at 474.
¶ 17 Koester argues that the commission erred in finding just cause for her discharge. She argues that, because the department was not able to prove to the commission many of the offenses that were specified in her termination letter, that necessarily means a lesser punishment than discharge was appropriate. We reject this argument. The commission sufficiently explained why the offenses that were proved were sufficient for discharge of a prison employee. Failure to prove other offenses does not somehow mitigate the ones that were proved.
¶ 18 Koester argues that the commission erred by briefly noting that her conduct "may well have played a role in Officer Z's suicide." Koester argues that this speculation lacked an evidentiary basis. However, even if that is true, we are satisfied that this one reference, as part of a much longer discussion, was not a significant factor in the commission's decision to uphold the termination.
¶ 19 Our affirmance of the just cause decision is not changed by our conclusion above that the commission erred by finding that Koester told "gay jokes" in the lobby. We are to remand to the agency if its decision "depends" on any fact not supported by substantial evidence. WIS. STAT. § 227.57(6) (2015-16).[1] "Depend" means "to be contingent" and "to require something as a necessary condition," and synonyms include "hang," "hinge," and "turn." Depend , WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993).
¶ 20 Here, we conclude that the agency's decision did not depend on the finding about "gay jokes" in the lobby. We are satisfied that, even without that finding, the commission would still have affirmed Koester's discharge, based on the number and type of other findings that it made.
III. Substantial evidence as to Witscheber.
¶ 21 The commission's first finding of misconduct by Witscheber was that he harassed coworkers. Witscheber argues that this finding was erroneous because the commission decision does not sufficiently describe the evidence. He cites no authority for the proposition that this would be a basis to vacate a finding. Witscheber also argues that the commission decision does not explain why the commission did not adopt proposed findings of the hearing examiner that were more favorable to Witscheber. However, he cites no authority requiring the commission to provide that explanation.
¶ 22 The commission found that Witscheber harassed Sergeant L. by making "frequent comments containing sexual innuendo." Witscheber argues that the evidence was insufficient regarding the frequency of that harassment. We conclude the finding is supported by substantial evidence. While it may be true that no witness testified as to a specific frequency, it was clear from the testimony that witnesses were describing regular occurrences. For example, when one witness was asked where she heard these comments, she said: "On the track mostly, occasionally in the squad room."
¶ 23 Witscheber argues that the commission erred by disregarding evidence that Sergeant L. herself "opened the door" to some of Witscheber's harassment by making jokes herself about her shortness or by telling sexually related stories. Witscheber does not explain how these acts by Sergeant L. would permit him to make similar jokes or comments.
¶ 24 The commission found that Witscheber forwarded inappropriate email messages. Witscheber argues that there is insufficient evidence to show that the messages violated department rules. However, he does not identify the rule at issue or explain its content.
IV. Just cause as to Witscheber.
¶ 25 Witscheber argues that the commission erred by briefly noting in its discussion of just cause that his conduct "may well have played a role in Officer Z's suicide." His argument is the same as Koester's above, and we reject it for the same reason.
¶ 26 Witscheber argues that the commission's findings that he lied during the investigation do not justify discharge. However, as is clear from the above discussion, that conduct was not the sole basis for his discharge. Within that context, Witscheber does not argue that his lying was an improper factor to be considered as one among several. Therefore, Witscheber has not shown that the commission erred.
By the Court.-Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.